JUDGE BATTS

# 09 CV 10616

# United States District Court
## SOUTHERN DISTRICT OF NEW YORK

KATHRYN JORDAN,
              Plaintiff,

v.

INDEX NO._____

Date Index Purchased:_____
JURY TRIA - RQMANQ(d)

JUDGE JONATHAN LIPPMAN, JUDGE JUDITH
KAYE, JUDGE LUIS GONZALES, JUDGE ROLANDO
T. ACOSTA, JUDGE JAMES CATTERSON,
JUDGE DAVID FRIEDMAN, JUDGE JOSEPH P. SULLIVAN;
JUDGE PETER TOM,  JUDGE MARCY FRIEDMAN;
JUDGE SHIRA S. SCHEINDLIN, JUDGE GEORGE P. DANIELS;
JUDGE GERARD LYNCH, JUDGE RONALD ELLIS,
SECOND CIRCUIT COURT OF APPEALS (c/o
JUDGE RALPH WINTER & CLERK OF COURT);
NEW YORK COMMISSION ON JUDICIAL CONDUCT;
NEW YORK COUNTY CLERK;  GREGORY HOMER,
DONALD BESHADA. DRINKER BIDDLE; KENNETH GAGE,
PAUL HASTINGS; LAURENCE LEBOWITZ, KLEIN ZELLMAN;
GARY PHELAN, WAYNE OUTTEN, OUTTEN & GOLDEN,
DAVID M. FISH, ROSEN LEFF; VERIZON GENERAL COUNSEL;
WPP GENERAL COUNSEL.
              Defendants.

## Complaint

To the UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK:

      **COMES NOW PLAINTIFF,** Kathryn Jordan, and the People of New York, pursuant to the Constitution of the United States and Bill rights, CVR Article 2 (10) and 2(13),  Violation of USC Title 18; 286; 371; 1505; 1511;1512; 1513; 1519;  42 USC 1961-1962; 18 USC 2; New York Penal Code 460.10 Article 1(a) Sections 190.65, 200.45;200.50; 215.35; 215.19, 205.65, 215.40 and Article 3; New York Judicial Code Article 4 Section 90; Article 7-c; 22 NYCRR Part 100 Rules of Judicial Conduct; 22 NYCRR Part 1200 New York Rules of Professional Conduct, the Americans with Disability Act, Title VII, and federal anti retaliation laws, sues the named Defendants individually and as officers of the Courts they represent for Obstruction of Justice,

Conspiracy to Defraud and Fraud in the Inducement, Violation of Constitutional Right to Free Speech, Hearing before a Jury, Right to Appeal, Right to Accommodation under the Americans with Disability Act, Right to Legal Representation, especially upon execution of release of complex legal rights, Right to Appear Self Represented, Tampering with Witnesses, Attempt to Influence a Judge(s), Acceptance of Bribe(s) by Judge(s); Tampering with Evidence, Coercion, Extortion, Retaliation, Breach of Judiciary Law, Breach of the Professional Conduct Law, Failure to Recuse by a Judge with Conflict of Interest, et al.

1. The Plaintiff is a resident of New York, New York (954 Lexington Avenue, #502 is Plaintiff's mailing addresss) and has been for most of her life, with the exception of almost three years as a resident of Palm Beach Florida beginning in 2005.

2. The Defendants are judges with the Supreme Court of New York (Judge Marcy Friedman, 80 Centre Street, NY, NY 10007); the First Department Appellate Division (Judge Luis Gonzales, Judge James M. Catterson, Judge Joseph P. Sullivan, Judge David Friedman, Judge Rolando T. Acosta, Judge Peter Tom @ 27 Madison Avenue, NY NY 10010), Judge Jonathan Lippman, NYCOA (@20 Eagle Street, Albany 12202), Judge Judith Kaye (formerly NYCOA Chief, now Chief of Commission on Judicial Conduct, 1133 Avenue of Americas, NY NY 10036; Judge Shira S. Scheindlin, USDC Southern District , 500 Pearl St, New York NY 10007; Judge George P. Daniels, USDC Southern District, 500 Pearl St. New York NY 10007; Judge Ronald Ellis, USDC Southern District 500 Pearl St, New York NY 10007; Second Circuit Court of Appeals (attn: Judge Ralph Winter) 40 Foley Sq, New York NY 10007; Gregory Homer, Donald Beshada, Drinker Biddle 140 Broadway New York NY 10005, Kenneth Gage, Paul Hastings, 191 N. Wacker Dr. Chicago IL 60606; Laurence Lebowitz @ Klein Zellman, 485 Madison Avenue, New York NY 10022; Gary Phelan, Wayne Outten, Outten & Golden, 3 Park Avenue, NY NY 10016; David M. Fish & Rosen Leff, 3 Park Avenue, New York NY 10016 (c/o Outten & Golden).

3. Plaintiff asserts that at all times throughout the incidents described in this Complaint that she was disabled with Multiple Sclerosis, and that all of the Defendants were on notice of this during the now 15 year ordeal. Despite this obvious challenge, Plaintiff had advanced her career to become a senior Marketing and Advertising Executive in the $250K base salary range at the start of this saga. Recent disclosure of

judicial compensation disputes have made this information more relevant to the Complaint.

4. Plaintiff alleges that the Defendants, who comprise a small portion of the potential Defendant population of violators of the Judicial Law and Professional Conduct laws have created a *"culture of corruption"* in New York Courts, willfully and knowingly conspired to defraud her of her rights for protection against discrimination under federal and state law, her right to trial by jury, her right to an impartial hearing of the facts, and her right to appeal, if necessary, of the same. Instead, Plaintiff was targeted for an elaborate "case fixing" scheme aimed at depriving her of her rightful remedies as a victim of discrimination, , in order to dispense favors and exemptions to corporate violators of federal and state anti discrimination laws, who, in turn along with fellow attorney conspirators, would secure referrals, recommendations, and introductions that would lead to judicial promotions. These schemes involved improper influence of and by judges, influence of witnesses and intimidation of Plaintiff as the key witness in an active case, evidence tampering, manipulation and circumvention of the Laws of New York. As was proven at the July 2009 Public Hearings of the Judicial Committee of the New York State Senate, this malaise was pervasive across all courts and jurisdictions and not limited to Plaintiff's cases. Thus the class action implications.

4. This Complaint is about how a dysfunctional judiciary, without any oversight of an effective regulatory body, and under a corruption leadership, was able to execute a complex 15 year case fixing scheme whereby the Rules of Judicial Conduct and various Federal and State Laws the Laws of New York, as well as the Rules of Evidence, were circumvented and manipulated and where judges "chose" evidence and used their judicial powers to influence, censure, sanction and intimidate witnesses, in order to secure certain case outcomes and to cover up their own misconduct. Many of these schemes involved improper overtures from counsel to the acting judges, others involved judges deploying attorneys as arms-length agents of their conspiracy, some judges are alleged to outright broker deals when there was a large liability for the corporation or a large legal fee for the attorneys involved, and most involved judges failing to report corrupt and criminal acts by their peers, instead whitewashing the complaints and punishing the reporters of the same. Plaintiff was not just three time victim of these frauds and abuses, but an eye witness of a corrupt system, and a victim of judicial

retaliation. Plaintiff not only observed how cases were "fixed", but how all of the judges involved would be promoted or rewarded within a short time after the unlawful schemes. Plaintiff also was an eye witness to how the JCC refused to investigate complaints of these serious violations, and how other agents of the Courts (like administrative arms of County Clerk and Clerk of Court) often aid in the conspiracies to cover up judicial corruption.   However, it was when Plaintiff attended Public Hearings before the Senate Judiciary Committee in July 2009 that she realized how widespread this malaise had become.

### Jurisdiction and Venue

1.   This is an action seeking damages in excess of $75,000 but not less than
     $100,000,000, exclusive of costs, legal fees, & punitive damages. .
     The Court has subject matter jurisdiction under diversity of citizenship
     And complexity and nature of allegations, and the $75,000 minimum is more
     than met by the court costs that Plaintiff has incurred.

2.   Kathryn Jordan, Plaintiff ("Jordan"), was a citizen and resident of New York
     during the period of employer liability for the related discrimination cases
     (Kathryn Jordan v. Bates Advertising; Kathryn Jordan v. Verizon
     Communications) for the majority of her life including the present.
     However, during the period of 2005-2008 when many of these violations
     were committed, Plaintiff was a resident and citizen of Palm Beach FL,
     created a diversity issue that qualifies for federal jurisdiction.  Moreover,
     the issues of the underlying case involve violations of federal and state law,
     the former and most serious of obstruction of justice, one that clearly
     requires this Court's jurisdiction.

3.   Defendant judges and all clerical personnel all occupy positions in Manhattan
     courts (Supreme Court, 60 and 80 Centre Street, Appellate Division 27 Madison
     Ave, NY NY 10010), with the exception of Judge Jonathan Lippman who
     occupies office in Albany. Defendant Commission on Judicial Conduct is located
     in New York, NY, as is the County Clerk (60 Centre Street).  The Commission on
     Judicial Nomination is located in New York, NY as well.

8

4. Most of the violations asserted fall under Federal and State Law.

## Summary

While this case may appear on the surface to be a tragic tale of how a group of rogue activist judges and Machiavellian attorneys circled the wagons around a disabled female victim of discrimination virtually entrapping her in a legal prison for 15 years, in order to help their corrupt clients evade justice, it is really a snapshot of a dysfunctional Judicial system out of control for decades, lacking both leadership and regulation, and a clarion call to all that this is just the tip of a very large iceberg, one that poses to erupt in scandal that will cast a shadow for decades to come if not timely and conscientiously addressed.

## General Allegations

*"Decency, security and liberty alike demand that government officials shall be subjected to the rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for the law, it invites every man to come a law unto himself. It invites anarchy. (United States v. Olmstead, 277 U.S. 438 (1928).*

1. For the last 15 years, beginning in December 1995, when Plaintiff filed a disability discrimination case against Bates Advertising before the EEOC, and then before this Court (dismissed without prejudice by Judge Jed Rakoff, in a highly contested and confusing Opinion that contravened federal anti discrimination law that led the case to New York Supreme Court for trial, and a decade of appeals), and again in 2002 when Plaintiff filed a second, separate lawsuit for disability discrimination against Verizon Communications,(a case that was forced into settlement by the Trial Court Southern District Judge Shira Scheindlin through unlawful means, a scheme endorsed by the Second Circuit), and related Malpractice cases, Plaintiff has been embarked on a search for justice. This justice was delayed and denied.  Instead, Plaintiff became Witness to the dark underbelly of our Judicial system, where favors are routinely dispensed to corporate violators and errant judges, where the Rules of Evidence and Rule of

9

Law are routinely disregarded and manipulated to conform to ingoing biases of the particular judge or the "deal" on the table or the particular agenda or the politics of the situation, and where corporate attorneys frequently act as agents of these frauds as "armslength" favors for the judges.

3. In May-July 2009, Plaintiff participated, along with countless other deponents in public hearings before the New York State Senate Judiciary Committee chaired by Senator John Sampson, the latter who bravely initiated this process to provide a bona fide mechanism for residents to voice their outrage about the abuses of the Judiciary. It was here that Plaintiff learned she was not alone in the bizarre experiences she had with the legal system. It was here that Plaintiff realized the cavernous gap that divided public servant and served. It was here that Plaintiff realized that "justice" as a concept has become perverted without the oversight of an effective regulatory body or strong, ethical leadership of the Judiciary that would not only serve as the Model for the Modern Court but an example for all other jurists across New York, and across the country.

2. Unfortunately, Plaintiff becames witness to, along with other deponents (NY State Senate Judiciary Committee Public Hearings), of a "culture of corruption" and elitism, that has pervaded and spread a malaise across all levels of the Judiciary and all jurisdictions, clearly for a very long period of time. "Case fixing", evidence tampering, coercion of witnesses, influencing judges, conspiracies to defraud litigants, the government and the taxpayers in "deals" on large cases, disregard of the Rule of Law and Rules of evidence, manipulation of facts and records, sanitizing dockets, transcripts and Orders are all part of the accepted practice of judicial administration. Moreover, universal disgust with an impotent and incompetent JCC have left even the most sanguine litigants and the most ethical jurists disillusioned.

3. Plaintiff exhausted all of her remedies in all of the Courts to provide the

10

Judiciary with multiple opportunities to "course correct" and for the Commission on Judicial Conduct to do it's job and investigation Plaintiff's multiple complaints against the named defendants (posted on "JudgeWatch.com).

4. Plaintiff has witnessed how these corrupt judges, and their conspiratorial peers, have abused the trust of New York residents, voters and tax payers, to advance their careers and pocketbooks, and how they justified the most outrageous abuse of discretion and law to achieve their ends.

5. While judges are protected by a vast cloak of immunity, they are not protected from willful and criminal acts and violations of the Rules and Laws.

6. This case is legally about obstruction of justice by the guardians of justice, and the conspiracy that the leadership of the Courts have engendered in an "ends justifies the means" culture, where peers cover up, not report, violations of their judicial colleagues, and attorneys act as agents of elaborate frauds, where deceptions are perpetuated by manipulation of records and facts and law, and where the judges involved have all benefited, *de minimus* with promotions, and associated increased compensation, after using their power and authority to grant favors, manipulatefacts and law to defraud litigants and taxpayers. The sense of hubris is so immense that a public extortion demand for increased Judicial compensation was followed by an unlawful "order" of stipends of $10K for each judge in New York (a $147M taxpayer burden) for incidentals like "robe cleaning". This is just the tip of the iceberg. Many of these judicial favors are dispensed in return for "recommendations", "referral", "introductions" and other reciprocal acts that can advance judicial careers through the corrupt judicial nomination system that is controlled by corporate law firms and Corporate America.

7. We the People have had enough. We will no longer tolerate this abuse of trust

11

and the judges who flaunt the Rules and the Laws.   We will no longer be "censored" "sanctioned" or suppressed.   We seek the named defendants impeachment and appropriate sanctions imposed.   We seek disbarment of any attorney who has improperly attempted to influence a judge or whom knowingly carried out an illegal scheme for a judge.   We seek sanctions for any judge who failed to report such abuses.   We seek the dissolution of the Commission on Judicial Conduct and new leadership for a new regulatory body.   We seek review of the Commission on Professional Conduct Rules.   We seek removal from office Judge Judith Kaye as Chair of the Nomination Commission

9. The allegations below revolve around four cases which involved judicial corruption and obstruction of justice, fraud, conspiracy to commit fraud, organized crime by the Judiciary, retaliation against witnesses, extortion, blackmail, tampering with evidence, tendering and acceptance of bribes, and other violations of Federal and State law.   The *Jordan v. Bates* and *Jordan v. Verizon* cases were "fixed" in deals with trial and appellate judges. The same was effected on the Attorney Malpractice cases where many of the same defendants appeared.

## Fixing of Supreme Court Jury Verdict by First Department .

§  10. Justice to be administered without favor and speedily.  Neither justice nor right should be sold to any person, nor denied, nor deferred; and writs and process ought to be granted freely and without  delay, to all persons requiring the same, on payment of the fees   established by law.

### *Kathryn Jordan v. Bates Advertising 118785-99*

10.. Plaintiff won a major wrongful discharge disability discrimination case in April 2005[1] after a decade of litigation, attenuated discovery and three appeals.  During the trial it became apparent to Jordan that her trial counsel, Laurence Lebowitz, whom she knew to have been unprepared for what became an 11 day hearing, was actively cultivating a personal relationship with the judge. Later it would become apparent that

---

1. Jordan won the "wrongful discharge" for "perceived disability" charge, and was awarded 40% of her potential economic damages and zero P&S, and lost two other causes of action due to negligence by attorney Lebowitz and deceptions by opposing counsel Gregory Homer during discovery, withholding relevants documents , a clear fraud. WPP/Bates lost all post trial motions, after agreeing to jury instructions, and posted $3.3M Bond.

this "relationship" was motivated by an intent to cut a deal on the case.  In February
2006, the trial court upheld the jury verdict. However, in March 2006, after announcing
her termination of counsel Laurence Lebowitz for cause, things took a negative turn. On
April 3rd, 2006 after a legal fee hearing was "cancelled" with her adversary,  the trial
judge (Rolando T. Acosta) met privately with her then discharged attorney "Ex Parte" in
in chambers about the $1.3M contingent legal fee, a matter that was not before him.
Plaintiff was subsequently summoned to the meeting and threatened by the judge and
advised that he intended to "act as a fact witness against you" and "get assigned as the
judge on the Malpractice case", the latter threat he carried out on at least two occasions.
Moreover, Judge Acosta continued to encourage discharged counsel to make appearances
in Court and file pleadings, over Plaintiff's repeated objections.  When  Plaintiff objected
to this conduct, Judge Acosta sanctioned Plaintiff and issued a gag order censoring"the
parties", which he only enforced with respect to her and not the male attorneys.   Plaintiff
filed a complaint with the Commission on Judicial Conduct shortly after the first incident
and amended her complaints of the same, but no action was ever taken by the JCC.
During the first half of 2006, Post Trial Motions to dismiss or reduce the verdict were
filed and dismissed (Bates had agreed to the jury instructions so there were no "issues of
law" and the Defendants had admitted to knowing about the discrimination, but failing to
take remedial action, hiring new non disabled planners during the alleged "financial
crisis", along with supervisor admissions about the alleged efficiency of trading one
disabled executive for "several" non disabled ones, disproved the "pretext"s. The case
was appeal proof). During the latter part of 2006, Judge Acosta was asked to recuse
himself by Jordan, based largely on the conduct between the jurist and her former
attorney.  While he recused himself in September 2006, he could not resist issuing a Final
Judgment in November 2006 (published in February 2007) wherein he viciously attacked
Plaintiff as "contemptuous" and "contumacious" for making "baseless" allegations
against him, all explicit violations of the Rules of Judicial Conduct. Legally, he only
addressed the legal fee hearing in the Judgment, where he praised Mr. Lebowitz and
awarded him his fully hourly fees, while selectively reciting and paraphrasing Plaintiff's
alleged communications to the Court objecting to the whole sordid situation.

However, the vindictive  and manipulative jurist was not satisfied with destroying
Plaintiff's credibility with the Appellate Court, he then released (via clerks/Lebowitz) a

13

press release to the legal press and Internet (Court Central) where he presented the same distorted version of events.(It is indisputable that this story was leaked as Plaintiff spoke to the Law Journal at the time and was advised that the story "came from chambers"). Plaintiff took a voluntary polygraph about the events that occurred, which was conveniently removed from the Motion for Recusal to which it had been appended.

Unbeknownst to Plaintiff at the time, Judge Acosta was beginning to be considered for advancement to the First Department Appellate Division, upon recommendation by Elliot Spitzer (who also recommended Judge Lippman). This was also around the time that WPP would file it's frivolous appeal, around July 2007.

## First Department Participates in Cover Up

The First Department Appellate Division, which is statutorily obligated to guard the sanctity of trial verdicts and disturb them only on the rare occasion of "no rational person could arrive at the same"finding/ verdict or a serious issue of law, departed from its policy and decided to *reverse* the jury verdict on December 27, 2007, four days before the announcement of Judge Rolando Acosta's promotion to the First Department. It was apparent from the Decision that the panel, comprised of Judge Jonathan Lippman, Judge James Catterson, Judge David Friedman, Judge Joseph Sulivan, and Judge Luis Gonzales, were dispensing a large favor to the jurist by *improperly rendering a credibility decision* about the allegedly"baseless" allegations that Judge Acosta referenced in his Final Judgment to enable his vetting to proceed. Most relevant, this "evidence" was not before the jury or related in any way to Plaintiff's credibility during the 11 day hearing, yet it was subsequently used (upon lay-up by Judge Acosta) to discredit Plaintiff and call into quesiton the facts of the Bates case, which the jury found credible. The attack by the jurist, where facts had been selectively culled from Plaintiff's pleadings without her being able to rebut the same, should have been remanded to a special referee, or at least not considered in evaluating the Jury Decision, the latter of whom did not have the "evidence" of the dispute between the judge and plaintiff regarding his misconduct before them. (Plaintiff-Appellant raised the issue of the propriety of the Judge "sanctioning" the disabled litigant for her complaints about the Court in her appeal to the First Department –The Rules Of Conduct would automatically have indicted the jurist, if applied. However, Appellant also emphasized that the $1.3M

14

"contingent" legal fee dispute, a contract issue between Lebowitz and Jordan, was <u>not</u> before the Court and hence not on appeal).   This decision to adopt the unsworn denials of the judge as fact was an outrageous abuse of discretion by the First Department, but to include this in their calculus about the jury decision which *ended a year and a half earlier* was <u>*simply irrational and a deception of monumental proportion*</u>.  **The "fixing" was apparent by the circumvention of the relevant laws, the creation of new facts and paraphrasing of Appellant's testimony, the disregard of the sworn admissions of guilt by the employer, and the dismissal of the case instead of remanding it to correct the alleged defects.  Further, the alleged legal defects were frivolous as Defendants had agreed to the jury instructions or the "law of the case" without objection.**  The First Department effectively re-tried the case without appellant present.

<u>Moreover, Judge Lippman then used this favor as an opportunity to change the laws on proving pretext in discrimination cases, adopting the ridiculously obscure "Stephenson v. Hotel Employees" case and the "legitimate reason" legal standard, which was not consistent with the tripartite standard of McDonnell Douglas or the more advanced "real reason" standard adopted by other states</u>.   However, the timing could not be ignored.  Judge Lippman was dispensing *two favors*, for which he would expect to be repaid: One, to his troubled colleague Judge Rolando Acosta who had been nominated by Elliot Spitzer to fill what would be an empty position as Judge Lippman, who had just entered the First Department six months prior, who was being vetted for advancement to NYCOA, and Judge Gonzales (also on the "Bates" panel) would replace him as Chief Judge for the First Dept; and a second favor to WPP Group and DBR, the latter of whom faced a $3.3M liability at that time.   This favor would be repaid many times as each of the judges involved in this scheme would be promoted, not censured, for their crimes. Plaintiff got in the way of this scheme when she filed her complaint against Judge Acosta.  Thus Plantiff's jury verdict bond of $3.3M was converted into a "favor for favor" commodity.

Perhaps most damning was the fact that during the investigation by the New York Commission on Judicial Conduct, Judge Acosta lied to investigators and failed to produce relevant information.  However, the "contemptuous" attack by Judge Acosta on the disabled plaintiff was alone a serious violation that required no investigation but the

JCC refused to comply with Judicial Law and censure the intemperate and retaliatory jurist.

## New York Court of Appeals Declines to Hear Most Important Discrimination Case In the Last Decade

§ 15. Right of appeal not to be denied. Notwithstanding the provisions of any general or special law to the contrary, a citizen shall not be deprived of the right to appeal to the legislature, or to any public officer, board, commission or other public body, for the redress of grievances, on account of employment in the civil service of the state or any of its civil divisions or cities.

In January 2008, Plaintiff filed for leave to appeal before NYCOA. Plaintiff knew that her case had met the most important criteria of "unresolved disputes among New York Courts" on a legal issue of "great importance" to New York Courts, especially where there was inconsistency or dispute about how the law should be interpreted.. Her precedent disability discrimination case met all the criteria. The Courts in New York were still inconsistently adjudicating the legal standard for proving "pretext" discrimination cases, many assuming that all an employer had to do was produce, but not prove, a "legitimate reason" (like "financial problems" and be exempted from any discrimination charge, while Courts outside New York (MI, NJ, CT, CA) had aligned around the "real reason" standard of proof. Thus, NYCOA, under Chief Judge Kaye (with Judge Lippman on his way in) instead heard the Bianca Jagger eviction case" and Plaintiff's Appeal repeatedly denied. Later, Plaintiff would learn that Judge Kaye was an old "friend" of Judge Acosta. She would also learn that what they had in common was a ruthless pursuit of power at any cost. This was when Plaintiff realized how far up the judicial ladder the corruption had crept. Judge Kaye, also a long ally of Judge Lippman, obviously dispensed a favor to him by not hearing the controversial case he had just fixed. Judge Kaye would then be repaid with an important appointment. But her betrayal, to her gender and the last 40 years of civil rights advances, was beyond comprehension and would overshadow her legacy.

Plaintiff's complaints to the JCC (which are posted on JudgeWatch.com) included the violations of all of the named defendants including the appellate court judges but like all complaints filed with the JCC, they were ignored and dismissed via form letter.

**Malpractice Cases( Bates & Verizon) Fixed**

*Kathryn Jordan v. Laurence Lebowitz et al , Kathryn Jordan v. Gary Phelan et alKathryn Jordan v. David Fish et al(600246/2007;105183/200;601806/2007),*

11. Equally important to this cover up was the fixing and disposal of three related Malpractice cases filed by Plaintiff in January 2007. These cases related to the mishandling of evidence and witnesses by attorney Laurence Lebowitz on the Bates case, the failure to conduct discovery on both cases by the two other attorneys (Defendants Gary Phelan and David Fish) and the fixing of another discrimination case, *Jordan v. Verizon*, filed by Plaintiff in Federal Court (addressed below) by attorney Gary Phelan. Mr. Phelan had entered into a secret agreement with opposing counsel Ken Gage to "settle" the case and not conduct discovery, a fact that Plaintiff-Appellant only became aware of as critical deadlines were missed and an MTC not filed. Mr. Fish willfully misrepresented to Plaintiff that she would retain certain ERISA benefits in the Settlement which Mr. Gage had disposed of through the legalese of the Agreement.

**Judge Acosta Carries Out Threat**

The first judge to appear on the Malpractice cases was, astonishingly, Judge Rolando Acosta. This was a brazen attempt to carryout his threat to Jordan on April 3, 2005 to "get assigned to the Malpractice case" and use his power to act against her. Jordan demanded recusal and in June 2007, Acosta recused for a second time. Judge Marcy Friedman, then within less than six months, prior to discovery and after she knew that the First Department Decision *clearly laid accountability for the alleged fatal defects of the "Bates" case on the attorneys,* dismissed all three cases in July 2008 after granting MTD's in mid December 2007(See First Dept Order December 27,2007) and when Plaintiff's counsel Mr. Bluestone was allowed to withdraw after demanding a large retainer from Plaintiff that was not part of their agreement, leaving the disabled Jordan to answer 3000 pages of MTD pleadings in a matter of weeks. Clearly, there could be no depositions held related to the "case fixing" where attorneys would be forced to tell the truth. Moreover, Judge Friedman also ordered that Plaintiff "seek permission of the Court" prior to filing any pleadings in Supreme Court, a completely arrogant and unenforceable directive but one intended to seal the deal. The fix was in and there would be no loose ends.

17

Upon dismissal by Judge Friedman, Plaintiff filed timely appeals with the First Department in January 2007. However, the County Clerk, now clearly part of this conspiracy, failed to deliver any of the records after 18 months. Plaintiff petitioned the First Department to compel production of a Certified Record repeatedly via pleadings, and for enlargement of the Record, after her adversary refused to sign the Attorney Affirmation, which was denied without explanation, and a second enlargement of time which was also denied. This was despite the fact that Plaintiff could not perfect her appeal without a record, and she was disabled with MS and Pro Se. Most damning though was the appearance of two judges who had serious conflicts: Judges Catterson and Judge Acosta. Judge Catterson was petitioned via motion to recuse. Without any response, he was secretly replaced by Judge Acosta who rendered the decision to dismiss the cases.

Again, for a third time, Judge Acosta recused, but again only after he had rendered his biased retaliatory Decision. This was clearly a conspiracy to protect this jurist again and to get rid of the "whistleblower" who had reported his misconduct. Judge Tom issued the final denial of Motion to Reconsider/Vacate and the fixing of this matter was complete by the insidious First Department Appellate Division *(M 4648, 4549, 2242, 3454, 3490, 4080,4081)* . Perhaps most indicative of the hubris that these jurists possessed was the outrageous and completely discriminatory demand that Appellant "seek permission of the court" before filing any future responsive pleadings. This was a gag order in disguise. No explanation was forthcoming as to how the First Department could find the attorneys liable for the reversal of the Bates jury verdict but then dismiss the malpractice cases. (Including the fixing of the Verizon case, detailed below).

### Verizon Case Fixed in Coerced "Settlement" by Trial Judge
#### *Kathryn Jordan v. Verizon Communications 19144-cv-02*

12. Plaintiff had filed a second disability discrimination case in federal court in 1996 *"Kathryn Jordan v. Verizon Communications"(10144-cv-02* ), against a repeat employer violator who flaunted the ADA. The case was scheduled for jury trial, per the Complaint. However, behind the scenes, another case fixing scheme was being created. Apparently, USDC Judge Shira Scheindlin decided that the case would be settled without telling Plaintiff who was attempting to advance discovery. Plaintiff counsel Gary Phelan

18

and Defense Counsel Ken Gage had brokered the secret settlement for Judge Scheindlin, obviously with the intent of helping their clients and cultivating favor with a powerful federal judge. Mr. Phelan refused to conduct or compel discovery, and misled Plaintiff about the status of the same until critical deadlines lapsed, Once the "deal" was agreed by the attorneys, Phelan informally withdrew. New counsel David Fish was then recruited to "help" close the deal. He misrepresented the terms of the settlement including critical ERISA benefits to Plaintiff, all to fraudulently induce Jordan to surrender her rights to a jury trial on the merits, her disputed ERISA benefits, and and any damages for her ordeal (worth millions in liability to Verizon; the demand was $31M). The token settlement ($100K) barely covered her current attorneys legal fees and was paid to Plaintiff to silence the attorneys. Jordan received no consideration and actually was forced to relinquish millions in benefit rights.

Judge Scheindlin achieved the goal of fixing the case for settlement by willfully circumvented the Rules and Laws of New York and intervene in the "settlement negotiation", outside the scope of her legislated role, and used her power and authority, and the threat of "litigation and sanctions" by Defendants, and an additional threat of "permanent litigation" by her, to force a coerced settlement when Plaintiff was without counsel and known to be "ill" at the time, but who had repeatedly rejected the offer (the first verbal "acceptance" by Mr. Fish was based upon a series of frauds, necessitating two more conferences which were NOT successful). Judge Scheindlin was well versed in the legal standard for "voluntary releases". She knew that Plaintiff should have been represented by counsel *de minimus*, yet she forced the deal down and intervened by improperly scheduling the "status conference" when Jordan's attorney had just withdrawn. Moreover she denied the petition for rescission only four days later after the "status conference", when Jordan had been able to see an attorney to review the agreement she had signed, clearly under duress, pro se. Then, as in all true cover ups, Judge Scheindlin set about tidying the paperwork. First, representing that Jordan was represented by Mr. Fish during the execution of the settlement in her Order, despite knowing he had withdrawn days before on July 12th, 2004, and then representing the same in the hearing transcript. Then, about a month later she had second thoughts and issued a new Order that represented Jordan has "Pro Se". This was not the Order Plaintiff received or used for the appeals. This was tampering with evidence that the

19

judge knew would go on appeal. Attorney Gage also helped by removing Exhibit A from the Agreement, which attested to the *severity of the damage* inflicted by Verizon's three year hazing and retaliation campaign upon disclosure of her disability and need for accommodation (letter from Jordan's physician).

On appeal, Judge Ellis would define the standard for voluntary releases as a "Voluntary...Strategic Choice". He then dismissed the appeal, misstating the facts of the record and the relevant law. On receipt of the Rule 60 (b) petition USDC fellow jurist Judge George P. Daniels denied the petition despite clear evidence of duress and coercion, and knowing Jordan was not represented. That was no problem for Judge Daniels who simply stated that Appellant *was* represented by counsel (a whopper lie) and exculpated all of the attorneys, none of whom "acted improperly". The Second Circuit, which clearly had an opportunity and obligation given the demand to review *de novo* to course correct this elaborate deception twice put its imprimatur on the cover up and then sanitized the docket.(The Second Circuit Decision has evaporated from the Pacer dockets as have the First Department's Orders on the Malpractice appeals as has Judge Acosta's original decision to uphold the jury verdict, which is appended to the Appendix of this Complaint).

## Lippman-Kaye Lawsuits Against Governor & Legislature:
*Maron v. Silver (58 AD 3rd 102); Larabee v. Governor(4761,4761A), and Kaye v. Silver(400763/08),*

There is no better example of the corruption that has contaminated our courts and its leadership than the decade long scheme by Judge Lippman and Judge Kaye, neither of whom were qualified for their roles as Chief Judge of the New York Court of Appeals (neither is a "scholar" or example of judicial ethics) and Chair of the Commission on Judicial Nomination, to sue the Governor and the New York Senate in a blatant extortion attempt, colluding and conspiring against the Legislature and the Governor to *force* an increase in judicial compensation. Deploying a series of frauds and legal manipulations, and clearly incensed about the disparity in compensation between the trial judges in New York Supreme Court (an IOU for sure) and Federal Courts, as well as jealousy about "private sector" compensation, Judge Lippman and Kaye have been diverting taxpayer funds for over a decade in cases like *Maron v. Silver (58 AD 3rd 102); Larabee v.*

20

_Governor(4761,4761A), and Kaye v. Silver(400763/08)._ In these matters Judges Kaye (former Chief New York Court of Appeals) and Chief Judge Jonathan Lippman (current head of NYCOA), deployed a series of false or exaggerated representations, and misapplication of New York Law, to literally extort pay raises for New York Judges. This vanity project and abuse of judicial power ("advertising" the lawsuit on the Supreme Court website, misusing taxpayer funds to finance the same) along with Judge Lippman's public admissions that judicial compensation is "my greatest priority", and his announced orders to circumvent the law by ordering "judicial stipends of $10K per judge" at a time when New York faces a potential $5B budget deficit, a fraud upon NY taxpayers, are completely outside the scope of either of their job descriptions, and constitute an abuse of tax payer funds, if not outright fraud.   Moreover, both leaders have presided over a decade of corruption in New York Courts, where "case fixing" and other violations of the law, have been encouraged and rewarded.  Every judge involved in the cases cited above for Plaintiff Kathryn Jordan, where favors were dispensed to employer defendants and the judicial process and Laws of New York circumvented to accommodate the same, have been promoted (Judge Lippman, Judge Kaye, Judge Gonzales, Judge Acosta, Judge Friedman).  In fact, Judge Acosta's promotion on December 30th, 2007 could not have been possible without the favor of Judge Lippman's reversal of the _Jordan v. Bates_ case on December 27th, 2007 and Mr. Robert Tembeckjian's & JCC's failure to properly investigate complaints of the same. .Mr. Tembeckjian has never investigated a complaint against an appellate judge or censored the same, despite a historic rise in complaints against the same.

Finally, upon information and belief, Judge Lippman has been signaling to judges that they are entitled to dismiss any case for any reason, in order to work down the admittedly overwhelming caseloads of New York Courts.  He has claimed to reduce caseloads by 25% todate already.  This is NOT the solution that the admittedly overburdened courts need.  (It will be interesting to see the proportion of protected class cases dismissed in this slaughter). It is a fraud upon New York Taxpayers, and a violation of the rights of all New Yorkers, and the trust that was endowed him when he was appointed to the highest leadership position in the Judiciary but whose admitted jealousy of "private sector compensation" and immense sense of entitlement and power have incited the current judicial crisis (along with processor Judge Kaye).. The "favor for

21

favor" culture of New York Courts was also observed by virtually all deponents at the public hearings for the Judicary Committee of Senator Sampson in May- July of 2009. The cases against Plaintiff were all pre-judged and vetted with "Ex Parte" information from the attorneys. All of the name judges have disregarded the Rules of Evidence and Rule of Law. This is now an accepted practice in the New York Courts.

## Remedy Sought

The impeachment of all named jurists, and resignation of all clerical personnel for the same, and the resignations of the leadership of the Commission on Judicial Conduct and the County Clerk involved in this organized conspiracy to obstruct justice is sought, and where not secured, criminal proceedings will be initiated with the Attorney General. The attorneys involved should be investigated for their roles as agents of these crimes, sanctioned severely, and where appropriate disbarred, according to the relevant civil and criminal laws. Mr. Lebowitz, Mr. Phelan, and Mr. Gage should all be barred from practicing law for their knowing, repeated, willful attempts to influence a judge on an acting case they were involved in with the intent of "fixing" the case and their participating in a conspiracy to defraud Plaintiff and the taxpayers of New York, and cover up the same. Mr. Homer and Mr. Beshada should also be investigated as to their role in the cover up, and sanctioned for both filing a frivolous appeal (a fraud upon the tax payers) and failing to report judicial and attorney misconduct that they were witness to, and their fraud in suppressing documents during a discovery (a serious crime). The allegations that they lied to Plaintiff and the discovery court about the relationship between the Parent and Operating companies (Cordiant, Bates and AC&R) should be pursued as a fraud, and prosecuted accordingly. And to the extent that any of these attorneys willfully misrepresented facts to gain their ends, the most severe penalties should be invoked.

Plaintiff seeks full restitution for her 15 year ordeal, which was indisputably protracted by the illegal and wrongful conduct of the Defendants, the parent company clients they represented and the General Counsel's for the same, all of whom knew was transpiring, and allowed it to continue as long as a Judge put their imprimatur on it.

22

Plaintiff seeks full economic, Medical, emotional, and punitive damages that she should have collected at the time of filing of her cases of discrimination (1995 for Bates; 2002 for Verizon), and the reimbursement of all court and legal costs including the "time in" for her role as her own attorney, and all interest accrued from 1995 when she first filed her first complaint..

Plaintiff seeks double punitive damages that will send a large message to the Judiciary as to the "zero tolerance" of these kinds of abuses. For Mr. Lebowitz, Phelan and Fish, who were paid to protect her interests and instead betrayed her trust, she seeks triple punitive damages.

Plaintiff seeks permanent change in the Judicial System so that no litigant is ever again denied his or her constitutional rights to a jury trial, and to the protection of that verdict, and the to Rules that currently provide overly broad discretion to judges to abuse their authority and to impose their biases upon litigants instead of acting as impartial triers of fact. Included .

Plaintiff seeks full restitution to New York TaxPayers for the time these judges abused acting against the Laws of New York, triple punitive damages for the same, and as these orders were mailed or emailed , Mail and Wire Fraud charges are sought.

COUNT I
OBSTRUCTION OF JUSTICE:
TAMPERING WITH EVIDENCE; INFLUENCING A JUDGE;
INTIMIDATING A WITNESS

1. This is an action for damages in excess of $75,000.

2. The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

3. Plaintiff is domiciled in New York, New York.

4. Defendants are mostly domiciled in New York, New York, and Albany NY.

5. The claims of Obstruction of Justice are governed by US Codes Title 18; 286; 371; 1505; 1511;1512; 1513; 1519; 42 USC 1961-2; 18 USC 2;

6. The Defendants involved in this cause of action are all of the Defendants named in this action;

7. Plaintiff re-alleges all of the General Allegations and adds:

23

8. Judge Rolando Acosta is charged with changing his Decision of February 2006 to uphold the jury verdict in the Jordan v. Bates case, and effectively throwing the case by libeling Plaintiff as "contemptuous" after she reported misconduct by the jurist, and by using his role as trial judge to discredit the jury verdict for the purpose of overcoming obstacles to his vetting for promotion to the First Dept, and more seriously using his powers of sanction and censure to stifle her complaints of judicial and attorney misconduct. Further, his use of his position to issue threats against Plaintiff regarding her termination of discharged counsel Lebowitz for cause (the validity confirmed by the First Department Decision of December 27th, 2009 which criticized the handling of evidence by counsel), her dispute with him about his claim for a $1,300,000 legal fee (a contract dispute not before the court), and her intention to file a Malpractice case for innumerable reasons that were not before the Court. Judge Acosta carried out those threats and had himself appointed as trier of fact three times on these matters (trial and appellate) and was recused three times. However, prior to recusal Judge Acosta illegally obstructed justice and Plaintiff's right to a fair hearing by an impartial trier of fact by entering biased, retaliatory Judgments (April 2006, November 2006, April 2007 and September 2009).

9. Judge Acosta also ventured outside his sanctioned role when he published stories in the legal press slandering and libeling Plaintiff. And when he removed Plaintiff's polygraph from the Recusal Motion that was filed on appeal.

10. Judges Lippman, Catterson, Friedman, Gonzales, Sullivan et al are charged with obstructing justice by "fixing" the Jordan v. Bates case to cultivate favor with a corporate violator of Anti Discrimination laws, WPP Group (former unit Bates Advertising), and a large corporate law firm, Drinker Biddle, whom these jurists would then secure referrals, recommendations and other benefits leading to promotions and raises from. The First Department panel also willfully violated the Rules of Judicial Conduct and New York Law

by adopting Judge Acosta's unsworn denials of baseless allegations without a proper investigation and legally, incorporating these "credibility" assessments about Plaintiff into their assessment of the Jury Verdict on the Bates case. The jury had no knowledge of the dispute between the jurist and plaintiff, nor should it have, consequently the incorporation of this "fact" into the calculus of the jury decision was not just improper,it was irrational.  It was clearly effected to dispense a favor to the errant judge so his vetting for promotion would not be complicated by an embarrassing relevation.

11. Moreoever, the First Department departed from accepted practice for disturbing jury verdicts (a 2%-5% incidence in most appellate jurisdictions) to reverse a jury verdict which was allegedly legally defective.  Assuming the latter was true, the remedy is remand for retrial not disposition of a 14 year old case on trumped up legal theories and new "facts".  Given that the employer admitted to the allegations and Plaintiff was a highly credible witness, the verdict should have remained undisturbed.  Instead, the FirstDepartment seized the opportunity to re-write the laws on proving "pretext" in discrimination cases, legislating from the bench, instead of *enforcing* existing anti discrimination laws.  The appellate panel, who admitted a bias against Appellant, should have recused itself.  Instead the jurists chose to obstruct justice and dole out favors to Judge Acosta and violator WPP Group.  This was a conspiracy to obstruct justice by jurists who had already violated the Rules of Judicial Conduct by failing to report Judge Acosta's breach of the Rules (the various charges against the jurists are posted on Judgewatch.com).  Either way, the decision to dismiss the case instead of remanding it back to the trial court for remedy of the alleged defects was clearly case fixing, especially when viewed in the context of the declared bias and calling of Plaintiff a "liar"for a) not reporting the discrimination to "anyone" at the time of the hazing by her supervisors; and b) her alleged "admission" that her employer had "layoffs" and "lost big accounts", a Fact that supposedly supported the pretext of "financial problems" (Note: the Lippman panel failed to see that the hiring of non

25

disabled Planners during this alleged financial crisis, along with innumerable
other inconsistencies, rebutted the pretext. But given the acceptance of the
jury instructions the entire appeal was moot and frivolous)

12. Further in January 2008, Appellant filed an appeal to the Court of
    Appeals, then overseen by Judge Lippman pal Judge Kaye, where the issue of
    the inconsistency in the interpretation of discrimination laws by New York
    Courts was disregarded and the case not heard, clearly as another favor.
    This time the favor was dispensed to Judge Lippman, and in return Judge
    Lippman would return the favor when it was time to appoint the Chair of the
    Nomination Commission.  Nonetheless, this was another act to obstruct justice
    by Judge Lippman.

13. Judge Marcy Friedman's decision to dismiss all four malpractice cases
    prior to discovery knowing that the First Department had placed blame
    squarely on the backs of the attorneys for negligent handling of evidence,
    was clearly an obstruction of justice, as she denied Plaintiff her right to appeal
    in order to perpetuate a cover up of a fraud.

14. The First Department's decision, under Judge Acosta, who recused himself
    only after dismissing the Lebowitz and other malpractice cases were clear
    evidence of fraud and obstruction of justice by the Court.  Neither Judge
    Catterson (who appeared and rendered the first Decision on June16th not to
    enlarge the record) and Judge Acosta (who affirmed the same) had any right
    to appear given their obvious conflicts and the allegations of case fixing by
    Jordan, and both of their declared biases against Plaintiff.  Such appearances
    were obviously made to obstruct justice.

15. Judge Shira Scheindlin's fixing of the Verizon case was more subtle by
    Judicial standards but far more insidious.  As a federal court judge charged
    with enforcing federal anti discrimination laws, her betrayal of her role as
    impartial trier of fact and protector of the defenseless, was far more serious.
    Judge Scheindlin conspired with both plaintiff and defense counsel to ensure
    that Plaintiff's case would never to go trial upon receipt of the case in July
    2003.  A plain reading of the complaint (ironically crafted by Mr. Phelan who

dropped the Retaliation charge) revealed that Plaintiff was not just
discriminated against but hazed, denied an RA, punished for disclosed a need
for the same by being put on probation for TWO YEARS and forced into a
state of collapse, then denied her fully elected ERISA benefits.   The
willfulness of the Defendant's actions were sufficient to give a thoughtful
judge pause, and the level of Plaintiff's status should have given rise to a
firm "NO" when the token settlement was proffered.   But Judge Scheindlin,
like the other defendants in this action, could not resist the opportunity to do
a large employer  a favor, hoping that she too might become a chosen one.
This federal judge's decision to disregard federal and state laws on voluntary
settlements and her scheme to manipulate a disabled woman without an
attorney (Phelan and Fish withdrew after they got their money)
into surrendering her employment rights including her ERISA rights and her
right to a fair hearing on the merits for her discrimination claims, for a token
settlement that went to the attorneys, was nothing short of Darth Vader.
(Jordan's demand was $31M and she received $100K that after tax did not
even cover her litigation costs).   However, like most criminals, Judge
Scheindlin made "mistakes".  Her biggest mistake, in her impatience to get
the case off her docket with the aid of Gage/Phelan, was to intervene in the
settlement process.   This was a clear act of obstruction of justice, as acting
judges are not allowed to intervene in settlements, especially where a
Magistrate or mediator has been assigned.  Judge Scheindlin also left a long
paper trail (this is where those who still do not get this are taking notes)
where Jordan had clearly objected to the terms of the Settlement, repeatedly
contacted the court for help, advised the court she was "ill" and without an
attorney, advised the Court that Gage had literally stolen the settlement
agreement when she decided not to go forward, had advised Verizon General
Counsel that she did not want to execute the agreement (prior to his
execution), that she was "confused" about the purpose of the surprise "status
conference", and that she had been repeatedly threatened by opposing counsel
with "litigation and sanctions". The trial courts response to these acts to
obstruct justice was to initiate one of her own: creating ominous scenarios

27

for Plaintiff of "permanent litigation" if she did not accede to the offer.
Further, if there was any doubt about the intentions of the trial court, the angry
denial of Plaintiff's request for rescission four days later (within the statutory
grace period) after having been medically treated and seeing an attorney,
said it all.   There was a Plan in place, a DEAL, and the trial court was not
moved by the pleas of a sick woman.   Scheindlin had her deal and she was
intent on Verizon paying up when the time came.

16. While judges do commit frauds and obstruct justice from time to time,
    there is always the appellate arm to keep matters in check.  Here we saw
    thelevel at which corruption has risen in New York Courts.   Jordan appealed
    the Scheindlin decision, as it has been her practice to allow the Courts the
    right to speak and defend their decision, to exhaust her remedies.   But her
    Rule 60 (b) Motion was DENIED by Judge George Daniels, who intentionally
    misrepresented Plaintiff's representation status, falsely stating that she had
    been "represented by three attorneys" (all of which departed prior to execution
    time), was not under duress (despite the indisputable threats by Ken Gage to
    sue her and impose sanctions if she did not go through with the "deal",
    knowing her own attorney lied to her and being part of that lie); and that
    "no one did anything improper, including the attorneys" , a complete
    whitewashing of the Record with the flick of a pen.  Opposing Counsel Ken
    Gage perpetuated the ruse by omitting Exhibit A from the partially signed
    Settlement Agreement (a document that attested to the severity of the damage
    Jordan endured at Verizon).  By the time the appeal got to the Second Circuit,
    who was asked to perform a De Novo review, the facts were beyond
    recognition.  Plaintiff was now a troublemaker, not a victim.  The Attorneys
    who orchestrated this obstruction of justice with Judge Scheindline were
    vindicated.   Everyone could sleep soundly because the deception had come
    home to the heartland: The Second Circuit Court of Appeals, where errant
    judges are greeted by St. Peter at the Gates.

       Jordan went to great lengths to point out the inconsistencies,
    outright falsehoods, and the relevant law (Judge Ellis to his credit defined it as

a "strategic choice" but clearly caved to the iron fist of Judge Scheindlin, not the torch of Lady Justice) to the Second Circuit. They were put on notice of the scheme to defraud her of her constitutional rights when she was most vulnerable and without counsel to advise her about an Agreement filled with legalese. They upheld the decisions of the Southern District (while corrupt and illegal, the Second Circuit clearly recognized the legal power of trial judges; but failed to recognize its obligation to deploy veto power when crimes were being committed against defenseless victims and the State)

17. Plaintiff had her suspicions about the motives of these judges who trampled On her constitutional rights and conspired to defraud her for their own persona gain, but when she saw the lawsuit by Judges Lippman and Kaye against the Governor and Senate, and Chief Judge Lippman's outrageous remarks about "priorities", something clicked. It was clear now that these judges were jealous and resentful of their "private sector" colleagues and that Jordan as a $250K base salary disabled female did not represent a heroine who had overcome insurmountable odds, but an enemy to be envied and destroyed. Ironically, by conspiring to betray the rights of the one most defenseless, these greedy and power crazed jurists saw an opportunity to "get in" on the private sector feast.

18. It would be tempting to treat this as an isolated incident that befell a helpless Disabled woman. However, as Jordan learned in the summer of 2009, this was just the tip of a very large iceberg. Upon attending the public hearings For the New York Senate Judiciary Committee, Plaintiff became aware of innumerable NY residents whose lives had been destroyed by callous, greedy and Machiavellian judges and lawyers. It was a moment she would not forget and a cause that kept her awake at night.

19. It was also apparent that these frauds were allowed to occur and foment Because of the complete lack of oversight by an effective regulatory body.

20. In preparing this Complaint, Plaintiff learned that dockets have been sanitized

(Second Circuit, First Dept) as the guilty desperately attempt to erase their footsteps.

21. Lastly, it is believed that through the manipulations of Judge Kaye and Judge Lippman, and their willful assertion of false facts and irrelevant law, that the State had to pay for a faux vanity lawsuit against the Legislature, rooted in the same greed and jealousy that all of their actions have been, all at great cost to the taxpayers of New York and at great cost to the image of the Judiciary overall which has been irreparable harmed by these rogue jurists.

22. Finally, Judge Lippman's judicial activism, whereby he has repeatedly acted as a legislator, reversing laws and preaching politics, has also been a fraud upon the tax payers of NY.

22 a. Moreover, the attorneys involved, Mssrs., Gregory Homer, Donald Beshada, Kenneth Gage, et al, all are accused of evidence tampering. Mr. Homer and Beshada willfully suppressed documents that proved the relationship between Cordiant/Saactchi, Bates USA, and Bates Advertising (AC&R). They withheld this discovery denying any legal relationship between these sister companies, only to later disclose this relationship in the Bond disclosure notice. This and other discovery deceptions precluded Plaintiff from being able to prove her entitlement to the top EVP Planning job, which was awarded to a non disabled male outside the company. Mr. Gage similarly cheated, suppressing discovery so Plaintiff would not be able to value the "consideration", and omitting the critical Exhibit I, from the Settlement Agreement. More seriously, he stole the agreement, which had been partially executed from a adjacent building where it had been delivered, knowing Plaintiff intended to retrieve it. This was a serious criminal act and the trial court was well aware of what transpired as she referenced it in the hearing.

30

## COUNT II

### CONSPIRACY TO DEFRAUD

### Civil Conspiracy Against Plaintiff
### &the People of New York and the US Government

*A civil conspiracy or collusion is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.*

23. This is an action for damages in excess of $75,000.

24. The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

25. Plaintiff is domiciled in New York, New York.

26. Defendants are mostly domiciled in New York, New York, and Albany NY.

27. The claims of Conspiracy to Defraud are governed by the Statute of Frauds.

28. The Defendants involved in this cause of action are all of the Defendants named in this action;

29. Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from Count I, and adds;

30. That all of the judges knew that the actions that they were commiting and the statements t that they made in their Decisions/Orders/Judgments were false and rooted in frauds, and that they rendered these actions with the purpose of defrauding Plaintiff of her right to trial by an impartial trier of fact or jury, the right to all benefits available to her as a victim of discrimination under Federal and State Laws, which they knew to have worth in the significant seven figures, but that they suppressed and tampered with evidence and manipulated Plaintiff's rights to coerce her into acting against her own interests; that they knew attorneys on these matters had tampered with evidence, and that they made willful misrepresentations to cover up their conspiracy; that they required the collusion of other judges, attorneys, clerks, and administrative officers of the court to carry out these conspiracies, and that the judges involved benefited from the conspiracy to defraud Plaintiff as did the original defendant corporations and their law firms.

That the Appellate Courts involved (First Department, New York Court

31

Of Appeals, and Second Circuit) were willful agents whose acceptance of
Decisions known to be undertaken in violations of Federal and State Laws,
and the Rules of Judicial Conduct, rendered them co-conspirators.
The same is alleged of the New York Commission on Judicial Conduct
who departed from its statutory role to aid these deceptions and cover them up
instead of initiating real investigations and impeachment proceedings.

31. That Judges Kaye and Lippman conspired to defraud NY Taxpayers by
filing a filing a frivolous baseless lawsuit filled with false claims, facts and
law for the purpose of enriching themselves and paying back the innumerable
IOU's that these jurists have accumulated over the years with the "favor for
favor" culture they created. Their actions disrupted the smooth running of
government and irrevocably harmed the image of the Judiciary.
Their motives, jealousy with the "private sector" and versus their USDC
"peers" compensation, were transparent and clearly have played a role in
their dispensation of justice in Jordan's cases and in countless others.
These actions were financed by NY Tax payer funds and constitute frauds
upon government. Moreover, the decision by Judge Lippman by circumvent
the Law set down by the First Department on this "issue of greatest priority"
by unilaterally ordering $10K stipends for each judge in the state was a gross
violation and a willful attempt to defraud the Taxpayers. It was only not
effected because the Legislature caught Chief Judge Lippman in the act after
he announced his intent to circumvent the law publicly. While he has been
ordered to return these illicit funds by the Legislature, there is still "time in"
owed to the New York taxpayers for these frauds over a decade.

32, That Plaintiff was consequently irrevocably harmed by these frauds
and lost 15 years of her life attempting to have the truth revealed in her
pursuit of justice. That Plaintiff who has MS suffered extreme physical
and emotional pain during this agonizing ruse, lost her career and economic
status, was deprived of rightful benefits, lost two homes to finance her
litigation costs.

33. That the costs of these conspiracies to defraud Plaintiff also defrauded
    the US Government and New York Taxpayers, who paid for these protracted
    legal schemes, and the salaries of the judges, attorneys and legal personnel
    involved. Plaintiff seeks reparation for these losses on behalf of the People
    of New York, treble punitive damages, and recovery of all costs with interest.

## COUNT III

### VIOLATION OF CONSTITUTIONAL RIGHT TO FREE SPEECH
Constitution of the United States and Bill rights,
CVR Article 2 (10) and 2(13),

34. This is an action for damages in excess of $75,000.

35. The jurisdiction for this action is based in part upon diversity of citizenship,
    and partly upon federal law and US Codes, and complex litigation with multiple
    parties.

36. Plaintiff is domiciled in New York, New York.

37. Defendants are mostly domiciled in New York, New York, and Albany NY.

38. The claims of Violation of Free Speech are governed by the Constitution..

39. The Defendants involved in this cause of action are all of the Defendants
    named in this action;

40. Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from
    Count I, and adds;

41. Plaintiff alleges that all of the named defendant judges abuse their
    discretionary powers of "sanction" and "censure" to suppress her complaints
    about their misconduct, including the "fixing" of three cases cited in the
    General Allegations, and to immunize themselves from disclosure
    and investigation. In the Bates case, a gag order was issued by Judge Rolando
    Acosta immediately after Jordan complained of his "Ex Parte" meetings and
    communications with discharged counsel, she was sanctioned and publicly
    ridiculed as "contemptuous" for the same. Judge Friedman issued an order

33

that Plaintiff "seek permission of the ALJ" before filing any future pleadings, despite knowing this would hamper Jordan's defense against her fixing of the Malpractice cases. This "technique" was adopted by Judge Tom, undoubtedly at the urging of Judge Acosta, to prevent Plaintiff from filing objections to the wholesale dismissal of three malpractice appeals with the sole purpose of perpetuating an elaborate cover up of these judicial crimes. And on the Verizon case, judicial power was deployed to coerce Plaintiff into taking action against her own interests and over her repeated objections to relinquish both her existing rights and her claims of discrimination and ERISA violations. These abuses removed the concept of free will and voluntary from the outcomes as Plaintiffs voice was stifled, and her real positions manipulated to conform to the ingoing schemes of the conspiratorial judges and attorneys.

42. Plaintiff was consequently irrevocably harmed by these frauds and lost 15 years of her life attempting to have the truth revealed in her pursuit of justice. That Plaintiff who has MS suffered extreme physical and emotional pain during this agonizing ruse, lost her career, both of her homes, her credit rating and economic status, suffered medical consequences, and was deprived of right to damages for the original discrimination crimes. She seeks full restitution of her losses, interest, and punitive damages.

COUNT IV

BRIBERY AND EXTORTION

18 U.S.C. 11, Section 201

18 U.S.C. § 1951

New York Penal Code 200.45;200.50

43. This is an action for damages in excess of $75,000.

44. The jurisdiction for this action is based in part upon diversity of citizenship,

34

and partly upon federal law and US Codes, and complex litigation with
multiple parties.

45. Plaintiff is domiciled in New York, New York.

46. Defendants are mostly domiciled in New York, New York, and Albany NY.

47. The claims of Bribery and Extortion are governed by Federal and State Laws
And the Statute of Frauds.

48. The Defendants involved in this cause of action are all of the Defendants
named in this action;

49. Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from
Count I, and adds;

50. Plaintiff alleges that attorney Laurence Lebowitz attempted to bribe Judge
Rolando Acosta about a $1,300,000 contingent legal fee, a matter that was not
before the court, by cultivating a personal relationship with the Jurist, by
improperly meeting and communicating with said judge after attorney was
discharged for cause, that said Judge was receptive to these overtures and
facilitated the illegal and wrongful agenda by a) threatening Plaintiff with
serious consequences if she did not agree to the contingent legal fee or
abandon the malpractice cases; and b) encouraging the filing of pleadings by
Mr. Lebowitz after his termination, and disregarding Plaintiff's directive that
he was discharged from the case,. Moreover, Judge Acosta, on April 3, 2006,
allowed himself to be influenced by "evidence" that had not been
authenticated much less entered into the record which Attorney Lebowitz
introduced to discredit Plaintiff (his former client) an d induce the Judge to
intervene in the contingent legal fee dispute and the planned malpractice case
Jordan indicated she planned to file. Judge Acosta accepted these invitations
and subsequently had himself assigned as jurist to the Malpractice cases, both
on trial and appeal, involving Attorney Lebowitz on no less than three
occasions (where he had to recuse) and acted against Plaintiff's interests on
each of these occasions. Further, that Judge Acosta expressed an inordinate
interest in the legal fee dispute after this "Ex Parte" meeting during which
Plaintiff was threatened repeatedly. That opposing counsel participated in this
scheme by aiding in the facilitation of Mr. Lebowitz presence on the case after

35

his discharge and by filing a frivolous appeal, knowing that it would be reversed by either Judge Acosta (who was being promoted to that court) or Judge Lippman (who was leaving the First Department for NYCOA).

Upon information and belief, the appointments of these and other judges could not have occurred without the arms length manipulations of corporate attorneys who had a stake in the perpetuation of a corrupt system of favors.

51. Further, it is believed that a deal was entered into between Judge Acosta and Judge Lippman, and with the JCC, to immunize the jurist from investigation and censure, where opposing counsel played an arms length role, by characterizing Plaintiff's bona fide claims as "baseless" without an independent investigation.  This in turn was used to dispose of Plaintiff's jury verdict, while Judge Acosta looked the other way, so that a favor could be dispensed to WPP Group and DBR, two entities positioned to aid Judge Lippman and Judge Acosta and the Lippman "Bates" panel in his future career plans. And to advance Judge Lippmann's conservative Pro Employer agenda to make it more difficult to prove discrimination for victims of the same in NYS.  Judge Acosta was promoted within four days of the filing of the Decision by Judge Lippman that reversed the jury verdict on December 27th, 2007.  Judge Lippman was promoted to Chief of NYCOA in December 2008, after having held the position of Chief Judge of the First Department for only six months.

52..That a  second deal was arranged whereby Judge Friedman, in NYSSC, would fix all of the malpractice cases, so the attorneys who aided in the cover ups would be protected and there would be no loose ends, in her decision of July 2008. This was despite the First Department's Order placing blame on the attorneys. Judge Friedman was advanced to Complex Litigation.

53. That a third deal on the Malpractice/Bates case was effected whereby Judges Catterson and Acosta would secretly issued dismissal of the appeals of

said malpractice cases, when they were obligated to recuse, in order to
perpetuate the cover up. Judge Tom also participated in this scheme, along
with the County Clerk, who failed to deliver a certified record upon which to
appeal, where Jordan, known to be disabled with MS, but was denied
enlargements of the record and time.

54. That every judge involved in the fixing of the *Jordan v. Bates* case was
promoted within a year of the scheme.

55. On the *Jordan v. Verizon* matter, it is believed that attorney Gary Phelan
acted to advance the secret settlement deal, at the direction of Judge Shira
Scheindlin, in order to cultivate future IOU's with the District Court and Paul
Hastings (future referrals from PH were openly discussed during Plaintiffs
deposition), and David Fish promised a quick $10K without any risk of a
protracted jury trial. The trial court's role was to intercede in the stalled
settlement negotiation, to enforce the wrongful threats of opposing counsel of
"litigation and sanctions" to create the duress necessary to overcome
Plaintiff's strong resistance to the "deal" and Mr. Phelan's role was to force
her to relinquish her rights to a $31M case and ERISA rights by allowing
critical discovery deadlines to lapse, portraying both this and the Bates case
(each valued at $5M plus) as "trainwrecks" and to provide a "strategy
analysis" of the case that predicted doom. Judge Scheindlin was eager to do a
deal with the large employer whereby she might secure a high level
connection or reference in her future career, either through Paul Hastings or
some other corporate law firm. Both law firms were more than willing to
oblige.

56. Judge Scheindlin used her position as trial judge to schedule a surprise
"status conference" when she knew Plaintiff was "ill", "confused" and
without counsel (Mr. Fish having withdrawn on 7/12, two days before the
"final deadline" imposed by Mr. Gage), ignore Plaintiff's repeated pleas
for help with the "coercion", and manipulate the record to make it appear

37

Jordan was represented.  She also directed all critical questions at the final
conference to co-conspirator and opposing counsel Ken Gage.

57. Judge Scheindlin was well aware that a $100K settlement offer on a $31M
case was an attempt to defraud the disabled Plaintiff and that forcing
Plaintiff to accept the "deal", saving Verizon millions in damages, was in fact
a fraud.  She knew that the partially executed Settlement document had been
stolen by Defense counsel Paul Hastings, Ken Gage.  She knew the laws on
voluntary releases.  She knew that she had the power to grant a short stay
for Jordan to secure new counsel when it was revealed that her attorneys had
misrepresented the deal to her and her rights.  De Minimus, the jurist saw an
opportunity to remove a case from her docket that she did not want to try but
did not want to self recuse either.  However, the amount of the "favor"
granted to a large corporate violator is not one that can be overlooked or
minimized.  This is especially true given the frauds that Judge  Scheindlin
perpetrated to gain the appellate court's approval of her deceptions.   She
manipulated the Orders and the Record to suppress the true facts of the matter.
She even looked the other way when a "Settlement" document that was not
even page signed, had no "Exhibit A' appended to the same when it was
recorded for the appeal.

58. These facts were all before the appellate courts, including the Second
Circuit and Judge Daniels, all of whom claimed to perform "de novo"
reviews.   However, the legal system works on a system of bribes ("favors")
and extortion (use of judicial power to manipulate outcomes of cases).  And
despite the Rules on Judicial Conduct that require reporting of crimes by other
judges, the reality is systematic cover ups and circling the wagons.The
attorneys are the agents of these crimes.

59. It is indisputable that the token settlement went to pay the attorneys,
And that Plaintiff received no "consideration" for her forfeiture, even the
token settlement terms that Verizon refused to honor a month after execution

of the agreement.   Why maintain appearances when you have what you
schemed to secure?  The bottomline is that Plaintiff was forced to forfeit
millions in damages and benefits in this "no legal representation" coerced
deal.  This was a very large favor that was bestowed in Verizon.
The motives and actions of the Court cannot be ignored, even if the appellate
courts put their imprimatur on this conspiracy.

60.  In sum, all of the cases brought by all of the named defendant judges
involved abuse of their discretionary powers of "sanction" and "censure" to
suppress her complaints about their misconduct and to immunize themselves
from disclosure and investigation.  In many instances, most markedly in the
Verizon case,this power was deployed to coerce Plaintiff into taking action
against her own interests and over her repeated objections.  These abuses
removed the concept of free will and voluntary from the outcomes as
Plaintiffs voice was stifled, and her real positions manipulated to conform to
the ingoing schemes of the conspiratorial judges and attorneys.  The bribes
ranged from docket reduction to promotion referrals to cover up of illegal
conduct of a judge by another judge(s).

61.  Plaintiff was consequently irrevocably harmed by these frauds
and lost 15 years of her life attempting to have the truth revealed in her
pursuit of justice.  That Plaintiff who has MS suffered extreme physical
and emotional pain during this agonizing ruse, lost her career and economic
status, was deprived of rightful benefits, lost two homes to finance her
litigation costs.

62. There is no better example of this system of extortion and bribes than the
Lawsuit filed by Judge Kaye and Judge Lippman for increased judicial
compensation.  These jurists used their positions to literally hold the
Legislature and Governor hostage by threatening to shut down the judicial
System (via innuendo) if these increases were not met, and by circumventing
the judiciary by appealing to the needs of "Families and Children" to the

39

Legislature . It does not get more insidious than this.  The People of New York had to foot the bill for these unlawful activities, that were clearly outside the sanctioned role of either judge and we seek full restitution of this wasted time and expense for New York tax payers.

**COUNT V**

**RICO**

**ORGANIZED CRIME BY JUDICIARY OF NEW YORK**

**AND CONSPIRACY TO DEFRAUD PLAINTIFF OF PENSION/RETIREMENT FUND**

63..This is an action for damages in excess of $75,000.

64.The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

65.Plaintiff is domiciled in New York, New York..

66..Defendants are mostly domiciled in New York, New York, and Albany NY.

67.The claims of Organized Crime and Pension Fraud are governed by Federal Laws and by the Statute of Frauds.

68.The Defendants involved in this cause of action are all of the Defendants named in this action;

69.Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from Count I, and adds;

70.Plaintiff alleges that all of the named defendant judges have transformed the Judiciaryinto an organized crime operation instead of an instrument of administration of justice.  As attested to by countless complaints sworn to at the Public Hearings before the New York State Senate Judicary Committee, widespread corruption of New York Court's has occurred, with witness intimidation/tampering, tampering with evidence, disregard of the Rule of Law, abuse of their discretionary powers of "sanction" and "censure" to suppress complaints about their misconduct and to immunize themselves from disclosure and investigation.  These abuses have transformed NY Courts into a "culture of corruption" where judges cover up for judges who violate the Rules and Law, attorneys act as their agents, and the most egregious offenses rewarded with

40

promotions, pay raises, and other economic or status elevation renumeration. Any attorney who did not play ball" was blacklisted' as was any plaintiff who objected to the scheme.

71 This systematic corruption requires a major mandate for investigation, sanction, impeachment and reform.

72.Plaintiff has personally witnessed, and been victim to, the fixing of at least three cases in federal and state court. In these matters, the Judiciary acted to "circle the wagons" around the victim (Plaintiff) of the crime, and enable and exculpate the perpetrator of the same (Defendant Corporations ), using corporation counsel as armslength agents. This was not just revictimization of a defenseless litigant, but a wholesale brazen willful violation of the oaths these judges took when the public entrusted them in office. And in each instance described in the General Allegations above, additional frauds were required to perpetuate the original deception and circumvention of the Laws.

73. No regulatory body or appellate review panel ever interceded to stop this outrageous long term scheme, instead dispensing favor after favor and in turn commiting further violations of the Rules and Laws.

74. In one instance, Plaintiff personally was induced through fraud to surrender her meager Pension and Retirement savings, a violation of USC 664.

75..Plaintiff was also witness to bribery of judges who sat on cases with large Liabilities for the employers. She herself was subjected to coercion and Bribery but more seriously she witnessed an attorney bribe a judge (USC 201) on the Bates case (Attorney Lebowitz with Judge Acosta, vis a vis a $1.3M legal fee; Judge Lippman bribe Judge Acosta to "Fix" the case by wrongfully attacking Plaintiff in a final judgment; Attorney Ken Gage bribes attorneys Phelan & Fish with promises of "referrals" if they persuaded Plaintiff to accept the token settlement, and withdraw after threats were made, leaving Plaintiff to execute a Legal Document pro se; Judge Friedman was obviously promised certain benefits if she dispensed with three malpractice

41

cases knowing that the First Department had already decided the attorneys
made "fatal errors", and Judge Rolando Acosta who again appeared on
appeals and manipulated his colleagues to dispose of the malpractice appeal
undoubtedly with the specter of future promotions, referrals and premium
cases promised.

76. This system of organized crime has replaced our system of justice,
as was repeatedly attested to over the Public Hearings of 2009,
and the taxpayers demand restitution.

## COUNT VI

### VIOLATION OF ADA AND TITLE VII

#### AND SYSTEMATIC DISCRIMINATION AGAINST PRO SE LITIGANTS

77..This is an action for damages in excess of $75,000.

78.The jurisdiction for this action is based in part upon diversity of citizenship,
and partly upon federal law and US Codes, and complex litigation with multiple parties.

79.Plaintiff is domiciled in New York, New York.

80..Defendants are mostly domiciled in New York, New York, and Albany NY.

81.The claims of Discrimination (Disability and Gender) are governed by Fedearl
and State Anti Discrimination Laws.

82..The Defendants involved in this cause of action are all of the Defendants
named in this action;

83.Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from
Count I, and adds;

84. It is a widely known fact that judges do not like to try discrimination cases
especially disability discrimination cases, and it is also widely known that
Pro Se litigants are systematically discriminated against by the Judicial
System (even the Rules are inherently discriminatory).

85.Plaintiff alleges here that part of the motive to fix her discrimination cases
was to accommodate this judicial bias instead of accommodating her as the
ADA requires.  Moreover, as a female in the legal sytem (See Florida
Supreme Court Report on Gender Bias in Judicial System) Plaintiff's rights

42

were systematically degraded and dismissed. The most egregrious offender was former Human Rights Commission judge Rolando Acosta, who literally orchestrated an organized campaign to isolate and humiliate her, even before the overture by Lebowitz about the $1.3M legal fee was made. These biases were also evident with Judge Scheindlin who treated Plaintiff, a former EVP executive, like an outcast who systematically needed to be silenced and disposed of. Judge Friedman found Jordan's disability annoying as well. The First Department revealed in their embarrassing December 27th 2007 decision to reverse the jury verdict how little they knew about or appreciated discrimination against a disabled female, especially in the "for profit" world. Their Opinion read like a law student paper out of the 1960's and literally embraced "blame the victim" theories. Further, their bias in favor of Corporate America blinded them to the obvious facts of discrimination including their own sworn admissions of guilt. Whether this was out of ignorance or greed or both will only be revealed after proper investigations made. Judge Rakoffs early decision to dismiss this case "without prejudice" when he did not want to try it, and when he knew the issue of "layoffs" was a triable issue of fact, not to mention the most popular pretext deployed by Errant employers, was simply shameful and led to Plaintff's heartbreaking and agonizing 15 years of time inside Judicial Prison.

86. Plaintiff has been irrevocably harmed as asserted above and seeks full restitution.

87. Plaintiff also seeks a review of all discrimination cases that have been reversed upon appeal, or dismissed with triable issues of fact and restitution to others who suffered similar fates.

88. Plaintiff calls for the resignations of all jurors involved in a "case fixing" scheme especially those named in this lawsuit.

43

COUNT VII

CONVERSION

89. This is an action for damages in excess of $75,000.

90. The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

91. Plaintiff is domiciled in New York, New York.

92. Defendants are mostly domiciled in New York, New York, and Albany NY.

93. The claims of Bribery and Extortion are governed by Federal and State Laws And the Statute of Frauds.

94. The Defendants involved in this cause of action are all of the Defendants named in this action;

95. Plaintiff re-alleges all of the General Allegations and Allegations 1-20 from Count I, and adds;

96. Plaintiff alleges that a $3.3M bond was posted on the Bates case, and that a $1.3M legal fee was in dispute.

97. Plaintiff further alleges that Judge Acosta was approached by Mr. Lebowitz For his assistance in securing the full contigent legal fee, which he knew Plaintiff would fight him on having just fired him for cause. A deal was Struck.

98. Plaintiff's complaints about the jurist posed a risk to the deal and to the Imminent promotion of Judge Acosta. The Final Judgment was intended To dispose of Jordan's complaints by discrediting her, but Judge Acosta;s attack summoned on Jordan to question Jordan as a witness, despite the fact that the entire matter occurred a year and a half later. Judge Lippman Used the Acosta attack to reverse the jury verdict, which Judge Acosta had clearly thrown making a decision to protect his own future ambitions, and disband the deal with Lebowitz.

99. However, there was still a $3.3M bond that Jordan believed to be in place right up until this week ( it was secretly dissolved via motion a year ago with

44

a new judge who never contacted Jordan). Thus, the funds ID'd to renumerate Jordan for the discrimination that Bates admitted under aoth occurred suddenly evaparorated, and was converted back to violator WPP's coffers.

100. This was a well orchestrated fraud and the fact that three of the judges involved in fixing the case were promoted within a year's period of the action (Judge Acosta was promoted to First Department judge in December 2007, FOUR DAYS after the case reversal was announced with a large salary increase; Judge Gonzales (on the panel) was promoted to Chief of First Department; and Judge Lippman was promoted to Chief of NYCOA in December 2008)

101. As they say in all frauds "follow the money trail". This reversal of the Bates case, when the most conservative position would have been remand for retrial was clearly a fixed case and the funds reverted to WPP's coffers would be used in part to advance these jurists careers, while keeping WPP's reputation intact. At least that was the scheme.

102. In the Verizon matter, a case valued similarly to Bates in terms of liability (most estimates valued it higher because of the damage that was inflicted), Judge Schiendlin fixed the Jordan v. Verizon case by forcing a token settlement, saving Verizon at least $5-7M. However, because it was coerced and Jordan, who had MS, was denied counsel, it became clear very quickly that this too was a fixed case. Of significance was the role of Plaintiff counsel Gary Phelan who refused to conduct or compel discovery, letting key deadlines lapse. Verizon counsel then simply threatened Jordan with "litigation and sanctions". When Jordan contacted Verizon GC and asked for his help, after Gage literally stole the settlement document, to advise him that she did NOT want to go forward, and the deal was still consummated, but with "issues" around the fraud, Judge Scheindlin had to intervene in the settlement and issue some heavy threats of her own to protect the deal. Needless to say, there were some serious favors promised and given the blatant flaunting by Judge Scheindlin, probably some cash under the table as well. Only a criminal investigation would prove the latter.

Either way, Jordan's claim was converted into cash for the attorneys ($100K) and large IOU's for the trial court from one of the largest NY employers with DC connections.

102a. That Judge Lippman and judge Kaye also unlawfully ordered a secret o a judicial slush fund to pay for judicial pay raises via "stipends" of $10K per judge, or $140M, converting taxpayer funds to their own unlawful purposes.

## COUNT VII

### VIOLATION OF NY JUDICIAL CODE OF CONDUCT
### (INCLUDING ARTICLE 4; 90)
### 22 NYCRR PART 100; 22 NYCRR PART 1200

103 This is an action for damages in excess of $75,000.

104. The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

105. Plaintiff is domiciled in New York, New York.

106 Defendants are mostly domiciled in New York, New York, and Albany NY.

107. The claims of Violations of the Rules of Judicial Conduct and Professional Conduct are governed by Judiciary Law.

108. The Defendants involved in this cause of action are all of the Defendants named in this action;

109. Plaintiff re-alleges all of the General Allegations and Allegations 1-20 Count I, and adds;

All of the Judges involved have commited numerous violations of judicial conduct which require impartial administration of justice, equitable and fair dispensation of the Laws of New York (not legislating new laws or circumventing accepted procedures to avoid compliance, or to propound an agenda), compliance with the Rules of Evidence and Rules of Law, appropriate legal precedent, recusal when unable to render an impartial decision (not retaliation), judicial restrain;

46

use of sanctions sparingly and for serious offenses, not to silence critics or compaints, and failure to report peer misconduct which all of the judges named here as defendants are guilty of. Obviously "Case fixing" is not just a violation of the Rules but of the Laws of New York, as are evidence tampering and witness intimidation.

110. All of the attorneys named hear who acted as accessories or agents to these crimes and whom failed to report them when they witnessed the same re guilty of violating the Professional Rules of Conduct. Mr. Lebowitz, Mr. Phelan and Mr. Fish and Mr. Homer, Beshada and Mr. Gage are all guilty of case fixing and filing false documents and frivolous pleadings at great cost to taxpayers (Mr. Homer also cheated during discovery when required to disclose the corporate relationships between AC&R and Bates Advertising, a matter that was only recently disclosed with the Bond, but which led to the wrongful dismissal of the Failure to Promote cause of action which lacked supporting evidence, that DBR claimed did not exist as Plaintiff was "not an employee of Bates Advertising", another lie). This may come as a shock to the legal community who have come to accept manipulation and outright deception as part of a male dominated "win at all costs" culture. Mr. Homer knew that he was filing a frivolous appeal as well. He had already agreed to the jury instructions rendering the entire exercise moot, and it was his decision to try the case and not settle it even after his clients admitted in their federal depositions to knowing about the hazing and taking no remedial action.

111. For Mr. Gage, not only did he cheat Plaintiff out of discovery (with Mr. Phelan's assistance), he held "Ex Parte" meetings with the Court when Plaintiff was not present to defend herself, and he and Phelan conspired to force the case into settlement. His act to steal the partially executed "Settlement Agreement" was clearly evidence tampering and his threats of "litigation and santions" coercion.

112. However it was the trial court that should have put a stop to it and instead was cheering the lawyers on behind the scenes. And the appellate courts who should have noticed, in their de novo review, that these schemes were in play, instead they became part of the vast cover up.

113.    Most seriously, the Commission on Judicial Conduct failed to investigate these crimes having full knowledge of the same (all complaints are now posted on Judgewatch.com). Not one judge or appellate judge was even warned much less sanctioned or impeached, and we now seek to undue that harm by petitioning this action from this Court for the same and dissolving the JCC as an effete failure.

## COUNT VIII

### Denial of Right to Due Process- Legal Representation, Pro Se Representation, Right to Appeal, Right to Jury Trial

114. This is an action for damages in excess of $75,000.

115. The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

116. Plaintiff is domiciled in New York, New York.

117. Defendants are mostly domiciled in New York, New York, and Albany NY.

118. The claims of Right to Due Process. Legal Representation, Right to Self Representation, and Right to Jury Trial and Appeal are governed by Constitution and First Amendment.

119. The Defendants involved in this cause of action are all of the Defendant Judges named in this action;

120. Throughout the two main discrimination cases that were "fixed" by Judges Shira S. Scheindlin and Judge Rolando Acosta, with the sole intention of precluding her from having a bona fide trial on the merits, and if necessary (because of her adversary) appeal of the same, Plaintiff has been subjected to an endless barrage of gender and disability laced venomous attacks, false allegations and name calling. She has alternatively been accused of "firing all (nine of) her lawyers" (DBR. A knowingly false statement accepted by the biased courts.

48

Jordan fired only one of her Bates attorneys: Laurence Lebowitz, for cause. The latter was proven to be justified by the Appellate Divisions' incriminating Decision of 12/27/07). In fact, in virtually almost all circumstances where Plaintiff entered litigation with counsel but that relationship was severed, it was by the attorney and almost always for monetary reasons. The Courts simply do not appreciate the costs of litigation and why 95% of litigants cannot afford to write out a $100,000 check to defend themselves in Court. Moreover, a Plaintiff like Jordan, who was deemed able to read a legalese filled "Settlement Agreement" (Verizon matter) was ridiculed for appearing in Court on simple motions Pro Se. In fact, Plaintiff who had constraints like most litigants knew when she needed expert legal advice and knew when she could go it alone. As a former EVP who aided senior management of companies with complex strategy issues, the Courts should have given her the benefit of the doubt. Instead a barrage of "Pro Se" biases emerged in which Plaintiff's right to due process was almost always compromised or dissembled. Along with the libelous Acosta Decision, every jurist who saw a pleading would pre-judge her claims and it was apparent that her right to due process was being systematically disregarded. Instead of bestowing the same professionalism and courtesy given to their male peers, Plaintiff found herself frequently subjected to group ridicule and judicial bias. The latest decision to deny Plaintiff's right to have the Malpractice case appeals heard, is a continuation of this bias fueled by the misogyny of Judge Acosta. However, even in the civil Southern District, the undertone of contempt is pervasive. Here it belongs to the fallacy that all peer judges are always correct and always operate in the interests of justice, despite massive evidence otherwise. 121. It is not secret that judges do not wish to try Pro Se cases. But it is not for the extremely exaggerated position that Pro Se litigants do not know what they are doing, even former Fortune 100 executives who make twice what they do. It is exactly the opposite: It is the fear that attorneys could be easily replaced. It is also the fear by judges that "fix" cases that they will be found out, and here their fears are well placed. It is well recognized that attorneys will not report judicial conduct for fear of retaliation.

Pro Se litigants do not have this fear or liability, so they represent real threats to the abuse of judicial power that is destroying our judicial system today.

122. Nonetheless, Pro Se litigants are entitled to file cases and entitled to be treated with respect and professionalism. Like everything else in life, the superior judges grant this respect and the insecure and inferior judges do not. But here we are talking about the wholesale dismissal of bona fide cases, sometimes under the pretext of "case overload", a very dangerous concept, but even more seriously, dismissal of politically incorrect cases, especially where cases involve judicial misconduct or fraud. Thus, we have a serious potential for class action fraud operative here. Corrupt judges must be impeached. To not remove them from office would encourage the majority to disregard every precept ever held.

123. Plaintiff has repeatedly had bona fide cases dismissed prior to trial(Verizon was fixed as a "settlement"), and cases won in bona fide trials thrown out on frivolous appeals (Bates Lippman Decision of 12/27/07). However, we are talking FRAUD here and no amount of legalese is going to sustain that.

124.Plaintiff has also had her right to appeal denied. This is unthinkable and has been masked under "technical" reasons. And she has had appeals "heard" like the Lippman decision, which were clearly prejudged. But again we are talking about FRAUD. No one can say "just this once" and not realize what they are doing and the precedent it sets. Clearly, the right to have legal advice during a Settlement is essential. Only a judge with an ulterior motive would deny such a petition, or pretend that the situation were otherwise.

125. Plaintiff seeks full restitution for the refusal to allow her time to secure counsel for the Verizon settlement, and the lack of a coercion free negotiation. Conversely she seeks to reverse the disturbing of a bona fide jury verdict on the Bates matter unless the Court decides that Remand for retrial is the appropriate remedy. Nonetheless the Court's decision to obstruct justice out of some hidden agenda on these cases is something that the Attorney General will not be inclined to ignore even if this Court does.

**COUNT IX**

**LIBEL AND SLANDER**

**BY A JUDGE**

126. This is an action for damages in excess of $75,000.

127The jurisdiction for this action is based in part upon diversity of citizenship, and partly upon federal law and US Codes, and complex litigation with multiple parties.

128.Plaintiff is domiciled in New York, New York.

129.Defendants are mostly domiciled in New York, New York, and Albany NY.

130..The claims of Libel and Slander by a Judge are directed against Judge Rolando Acosta, who undertook a vindictive personnel campaign to destroy Plaintiff's reputation after she confronted him with his improper activities with attorney Laurence Lebowitz. Judge Acosta, viciously attacked Plaintiff personally in his Final Judgment in November 2006, in retaliation for her complaints against him and for her refusal to award same attorney $1,300,000 in contingent legal fees. Judge Acosta had previously upheld the jury verdict in February 2006 and the tone of the Decision (which was withheld from the Appeals Court) was factual and impartial. However, after the Ex Parte meeting between Judge Acosta and Mr. Lebowtz, which resulted in threats being made to Plaintiff, the jurist embarked on a tirade of false allegations, paraphrased statements and selective evidence, all of which he included in his "Final Judgment"even after he had been recused. Moreover, and this is where he committed clearly extra judicial acts, the jurist leaked innumerable stories to the press and on websites like Court Central beginning in August 2006, around the time he was being asked to recuse and when Jordan had initiated a Complaint to the JCC. Judge Acosta also leaked stories spun to his advantage to the Law Journal and internally to the clerks and other legal personnel. These events occurred long before the Appellate Division adopted his unsworn denials of "baseless allegations".

131.Plaintiff was so distraught and damaged by the attacks, and by the Appellate Division's adoption of the same, that she submitted to a voluntary polygraph, appended to her recusal motions (see Exhibit   ).

132. Over the years, this false and libelous document has been cited by every attorney on the east coast with the intention of discrediting her. Plaintiff has never been able to overcome the damage that was willfully inflicted by this vindictive jurist, who knowingly colluded to fix her case to advance his own career interests.

133. Plaintiff seeks full restitution of all damages plus interest and triple punitive damages.

WHEREFORE, Plaintiff Kathryn Jordan preys for judgment against Defendants Named above, including the General Counsels of the original defendant corporations who knew about the schemes and directed and paid for the same with shareholder funds; Plaintiff and the People of New York now seek the following remedies:

1. Impeachment proceedings against all of the judges for their violations of the Rules and public trust, and for their violations of NY Law named above;
2. Investigation into the role of the attorneys as agents of the frauds;
3. Removal of Judge Lippman and Judge Kaye from their leadership positions And barring them from ever acting as a judge in NYS again;
4. Dismissal of all cases filed on judicial compensation by Kaye/Lippman And replacement of the same with a Special Commission to investigate this issue empowered by the State Senate;
5. Vacating all orders issued by any of the named Defendants on any "fixed" Cased including but not limited to "Kathryn Jordan v. Bates Advertising", "Kathryn Jordan v. Verizon Communications", and the malpractice cases. Remand of these cases for trial/or settlement with legal representation during Negotiation;
6. Restitution of all damages incurred by Plaintiff for the last 15 years in all categories of harm.
7. Restitution of all taxpayer funds wrongfully collected in the pursuit of fixed cases.
8. Disbarments of all named attorney defendants.
9. Appointment of a Commission to Enact new Regulatory Legislation for the Judiciary and dissolution of the JCC.
10. Replacement of leadership of County Clerk and review of all policies and Procedures with caseloads in mind.
11. Appointment of a new Judicial Reform Commission to examine the current judiciary and all obstacles to timely disposition of justice and to deliver a proposed Judicial Reform Act of 2010 to Senator John Sampson by year end.
12. Double Punitive Damages for the willful nature of these crimes

WHEREFORE the taxpayers of New York who have suffered irreparable harm,

demand relief, and Plaintiff demands relief from her now 15 year ordeal,

we pray for this Court's timely adjudication of this matter.

Respectfully Submitted:

Katryn Jordan,
PLAINTIFF
954 Lexington Avenue
#502
New York NY 10021
917 5964617

MICHELLE MARTIN
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN BRONX COUNTY
REG. NO. 01MA6188882
MY COMMISSION EXPIRES 6-30-2012

On this 30 day of Dec. 09
before me  Kathryn
Jordan
appear and sign this
instrument

Cc: Attorney General Andrew Cuomo
    Senator John Sampson, New York Senate Judiciary Committee Chair

53

JS 44C/SDNY
REV. 1/2008

**JUDGE BATTS**

**09 CV 10616**

CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of
pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial
Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating
the civil docket sheet.

DEC 31 2009

PLAINTIFFS                                      DEFENDANTS

KATHRYN JORDAN                                  SEE ATTACHED

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)        ATTORNEYS (IF KNOWN)

PRO SE   KATHRYN JORDAN 954 LEXINGTON #502 NY NY 10021

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
1512 1513, 519
OBSTRUCTION OF JUSTICE; VIOLATION OF USC TITLE 18, 286, 371, 195 14 2 USC
ADA TITLE VII BILL OF RIGHTS, Fed R 46b 10, 4, 11 190 11

Has this or a similar case been previously filed in SDNY at any time? No? [x] Yes? [ ]    Judge Previously Assigned _____

If yes, was this case Vol.[ ] Invol.[ ] Dismissed. No[ ] Yes [ ] If yes, give date _____    & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)                NATURE OF SUIT

TORTS                                          ACTIONS UNDER STATUTES

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY- | [ ] 610 AGRICULTURE | [ ] 422 APPEAL | [ ] 400 STATE |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | MED MALPRACTICE | [ ] 620 OTHER FOOD & | 28 USC 158 | REAPPORTIONMENT |
| [ ] 130 MILLER ACT | LIABILITY | [ ] 365 PERSONAL INJURY | DRUG | [ ] 423 WITHDRAWAL | [ ] 410 ANTITRUST |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | PRODUCT LIABILITY | [ ] 625 DRUG RELATED | 28 USC 157 | [ ] 430 BANKS & BANKING |
| INSTRUMENT | SLANDER | [ ] 368 ASBESTOS PERSONAL | SEIZURE OF | | [ ] 450 COMMERCE |
| [ ] 150 RECOVERY OF | [ ] 330 FEDERAL | INJURY PRODUCT | PROPERTY | | [ ] 460 DEPORTATION |
| OVERPAYMENT & | EMPLOYERS' | LIABILITY | 21 USC 881 | PROPERTY RIGHTS | [x] 470 RACKETEER INFLU- |
| ENFORCEMENT | LIABILITY | | [ ] 630 LIQUOR LAWS | | ENCED & CORRUPT |
| OF JUDGMENT | [ ] 340 MARINE | PERSONAL PROPERTY | [ ] 640 RR & TRUCK | [ ] 620 COPYRIGHTS | ORGANIZATION ACT |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | | [ ] 650 AIRLINE REGS | [ ] 630 PATENT | (RICO) |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | [ ] 660 OCCUPATIONAL | [ ] 840 TRADEMARK | [ ] 480 CONSUMER CREDIT |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | SAFETY/HEALTH | | [ ] 490 CABLE/SATELLITE TV |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | [ ] 380 OTHER PERSONAL | [ ] 690 OTHER | SOCIAL SECURITY | [ ] 810 SELECTIVE SERVICE |
| (EXCL VETERANS) | PRODUCT LIABILITY | PROPERTY DAMAGE | | | [ ] 850 SECURITIES/ |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | [ ] 385 PROPERTY DAMAGE | LABOR | [ ] 861 HIA (1395ff) | COMMODITIES/ |
| OVERPAYMENT | INJURY | PRODUCT LIABILITY | | [ ] 862 BLACK LUNG (923) | EXCHANGE |
| OF VETERAN'S | | | [ ] 710 FAIR LABOR | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 CUSTOMER |
| BENEFITS | | | STANDARDS ACT | [ ] 864 SSID TITLE XVI | CHALLENGE |
| [ ] 160 STOCKHOLDERS | | | [ ] 720 LABOR/MGMT | [ ] 865 RSI (405(g)) | 12 USC 3410 |
| SUITS | | | RELATIONS | | [ ] 890 OTHER STATUTORY |
| [ ] 190 OTHER | | | [ ] 730 LABOR/MGMT | | ACTIONS |
| CONTRACT | | | REPORTING & | FEDERAL TAX SUITS | [ ] 891 AGRICULTURAL ACTS |
| [ ] 195 CONTRACT | ACTIONS UNDER STATUTES | | DISCLOSURE ACT | | [ ] 892 ECONOMIC |
| PRODUCT | | | [ ] 740 RAILWAY LABOR ACT | [ ] 870 TAXES (U.S. Plaintiff or | STABILIZATION ACT |
| LIABILITY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 790 OTHER LABOR | Defendant) | [ ] 893 ENVIRONMENTAL |
| [ ] 196 FRANCHISE | | | LITIGATION | [ ] 871 IRS-THIRD PARTY | MATTERS |
| | [ ] 441 VOTING | [ ] 510 MOTIONS TO | [ ] 791 EMPL RET INC | 26 USC 7609 | [ ] 894 ENERGY |
| | [ ] 442 EMPLOYMENT | VACATE SENTENCE | SECURITY ACT | | ALLOCATION ACT |
| | [ ] 443 HOUSING/ | 28 USC 2255 | | | [ ] 895 FREEDOM OF |
| REAL PROPERTY | ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | IMMIGRATION | | INFORMATION ACT |
| | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | [ ] 900 APPEAL OF FEE |
| [ ] 210 LAND | [ ] 445 AMERICANS WITH | [ ] 540 MANDAMUS & OTHER | [ ] 462 NATURALIZATION | | DETERMINATION |
| CONDEMNATION | DISABILITIES - | [ ] 550 CIVIL RIGHTS | APPLICATION | | UNDER EQUAL |
| [ ] 220 FORECLOSURE | EMPLOYMENT | [ ] 555 PRISON CONDITION | [ ] 463 HABEAS CORPUS- | | ACCESS TO JUSTICE |
| [ ] 230 RENT LEASE & | [ ] 446 AMERICANS WITH | | ALIEN DETAINEE | | [ ] 950 CONSTITUTIONALITY |
| EJECTMENT | DISABILITIES -OTHER | | [ ] 465 OTHER IMMIGRATION | | OF STATE STATUTES |
| [ ] 240 TORTS TO LAND | [ ] 440 OTHER CIVIL RIGHTS | | ACTIONS | | |
| [ ] 245 TORT PRODUCT | | | | | |
| LIABILITY | | | | | |
| [ ] 290 ALL OTHER | | | | | |
| REAL PROPERTY | | | | | |

Check if demanded in complaint:

[x] CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 109,000,000 OTHER

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____    DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: [x] YES  [ ] NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.