UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
KATHRYN JORDAN,

          Plaintiff,

     -against-

JUDGE JONATHAN LIPPMAN, JUDGE
JUDITH KAYE, JUDGE LUIS GONZALES,
JUDGE ROLANDO T. ACOSTA, JUDGE
JAMES CATTERSON, JUDGE DAVID
FRIEDMAN, JUDGE JOSEPH P. SULLIVAN,
JUDGE PETER TOM, JUDGE MARCY
FRIEDMAN, JUDGE SHIRA S. SCHEINDLIN,
JUDGE GEORGE P. DANIELS, JUDGE
GERARD LYNCH, JUDGE RONALD ELLIS,
SECOND CIRCUIT COURT OF APPEALS (C/O
JUDGE RALPH WINTER & CLERK OF
COURT), NEW YORK COMMISSION ON
JUDICIAL CONDUCT, NEW YORK COUNTY
CLERK, GREGORY HOMER, DONALD
BESHADA, DRINKER BIDDLE, KENNETH
GAGE, PAUL HASTINGS, LAURENCE
LEBOWITZ, KLEIN ZELLMAN, GARY
PHELAN, WAYNE OUTTEN, OUTTEN &
GOLDEN, DAVID M. FISH, ROSEN LEFF,
VERIZON GENERAL COUNSEL, WPP
GENERAL COUNSEL,

          Defendants.
------------------------------------X

ORDER

09 Civ. 10616 (DAB)

    Plaintiff Kathryn Jordan ("Jordan" or "Plaintiff") brings

this Complaint pro se,[1] alleging ten[2] causes of action arising

out of several employment discrimination and related legal

actions filed by Plaintiff in New York state and federal courts

---

[1] Plaintiff paid the filing fee for this action.

[2] Plaintiff's Complaint ends with Count Nine, but Plaintiff
has labeled two separate counts of the Complaint as Count Seven.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/10

over the past 15 years.  Named as Defendants in the Complaint are

judges and attorneys, the Second Circuit Court of Appeals and

Clerk of Court, the New York County Clerk, and the New York State

Commission on Judicial Conduct ("the Commission").[3]  Plaintiff

summarizes her case as follows:

> While this case may appear on the surface to be
> a tragic tale of how a group of rogue activist
> judges and Machiavellian attorneys circled the
> wagons around a disabled female victim of
> discrimination virtually entrapping her in a
> legal prison for 15 years, in order to help
> their corrupt clients evade justice, it is
> really a snapshot of a dysfunctional Judicial
> system out of control for decades, lacking both
> leadership and regulation, and a clarion call to
> all that this is just the tip of a very large
> iceberg, one that poses to erupt in scandal that
> will cast a shadow for decades to come if not
> timely and conscientiously addressed.

(Compl. at 9.)  Plaintiff seeks the "impeachment of all named

jurists, and resignation of all clerical personnel" and

Commission leadership, an investigation into and disbarment of

the named attorneys, "full economic, Medical [sic], emotional,

and punitive damages that she should have collected at the time

of filing of her cases of discrimination", double - and in some

cases, triple - punitive damages against Defendants, and "full

restitution for her 15 year ordeal."  (Compl. at 22-23.)

---

[3] The Commission is the state agency responsible for
enforcing New York's judicial conduct rules.  See N.Y. Const.
Art. VI § 22; Spargo v. New York State Comm'n on Judicial
Conduct, 351 F.3d 65, 67 (2d Cir. 2003).

For the reasons set forth below, each of Plaintiff's claims fails either due to lack of standing, lack of subject matter jurisdiction, judicial immunity, or failure to state a claim upon which relief may be granted.  The Court accordingly dismisses the Complaint in its entirety.

## I.  BACKGROUND

Plaintiff Kathryn Jordan is a "citizen and resident of New York" who is "disabled with Multiple Sclerosis".  (Compl. at 6, 8.)  Plaintiff has filed a number of cases in this District.  In 1996, Plaintiff first commenced an action against Defendant Bates Advertising Holdings, Inc. ("Bates") for employment discrimination.  See Jordan v. Bates Adv. Holdings, Inc., et al., No. 96 Civ. 5851 (JSR), 1999 WL 595669 (S.D.N.Y. Aug. 9, 1999) (dismissing federal disability discrimination claims with prejudice and state law claims without prejudice), aff'd. No. 99-9153, 4 Fed.Appx. 73, 2001 WL 138409 (2d Cir. Feb. 16, 2001). After her case was dismissed from federal court, Plaintiff initially prevailed in a state court action against Bates under the New York State and City Human Rights Laws, see Jordan v. Bates, 816 N.Y.S.2d 310 (N.Y. Sup. 2006), but the Appellate Division reversed the jury verdict and vacated the judgment. Jordan v. Bates, 46 A.D.3d 440 (1st Dept. 2007) (vacating

3

judgment as against the weight of the evidence on the ground that

Plaintiff did not rebut Bates' legitimate non-discriminatory

reasons for her termination).

Plaintiff subsequently returned to this District with two

separate actions against Verizon Corporation ("Verizon") alleging

employment discrimination and related claims.  In Jordan v.

Verizon Corp., No. 08 Civ. 6414 (GEL), 2009 WL 1490813, at *1

(S.D.N.Y. May 27, 2009), appeal pending, No. 09-3318 (2d Cir.),

Judge Lynch summarized Plaintiff's litigation history in this

District against Verizon:

> In 2002, Plaintiff Kathryn Jordan, a former
> employee of Verizon Corporation, brought an
> action against Verizon charging discrimination
> and denial of disability benefits.    That
> action was settled when the parties reached an
> agreement to resolve those claims. See Jordan
> v. Verizon Corp., No. 02 Civ. 10144 (SAS)
> (S.D.N.Y. Aug. 30, 2002), aff'd No. 04-5581,
> 2005 WL 3116750 (2d Cir. Nov. 22, 2005)
> ("Jordan I").  Jordan then moved to vacate the
> judgment in Jordan I.  See Jordan v. Verizon
> Corp., No. 02 Civ. 10144 (GBD), 2007 WL
> 4591924 (S.D.N.Y. Dec. 27, 2007) (denying
> Jordan's Rule 60(b) motion) ("Jordan II"),
> appeal dismissed, No. 08-1984, slip op. (2d
> Cir. Sept. 25, 2008) ("Jordan III").  While
> Jordan III was pending, Jordan brought a
> second action against Verizon, alleging state
> law breach of written contract, breach of oral
> contract, fraudulent inducement, and breach of
> covenant of good faith and fair dealing, all
> relating to the settlement agreement.

Id.  In his May 27, 2009 Order, Judge Lynch dismissed Plaintiff's

amended complaint for lack of subject matter jurisdiction.[4]

The gravamen of Plaintiff's Complaint before this Court is that Defendants conspired together to violate her rights under federal and state law in the hearing and processing of her employment discrimination cases against Bates and Verizon. Specifically, Plaintiff asserts that Defendants engaged in an "elaborate 'case fixing' scheme aimed at depriving her of her rightful remedies as a victim of discrimination," wherein the named judges "chose evidence" and intimidated witnesses "to secure certain case outcomes", "broker[ed] deals" with named attorneys, and were generally biased against her. (Compl. at 7-8.) For example, Plaintiff alleges that in the Bates state court action, Judge Acosta threatened her, "cut a deal" with her attorney, Defendant Lebowitz, to approve a $1.3 million legal contingency fee, and improperly got himself assigned to subsequent cases she filed in order to deny Plaintiff fair access to the court. (See Compl. at 12-13, 17-18.) Plaintiff alleges that Appellate Division Judges Lippman, Catterson, Friedman, Sullivan, and Gonzales "dispens[ed] a large favor" to Judge Acosta when they overturned the jury verdict in Plaintiff's

---

[4] A more detailed discussion of the Verizon litigation is set forth in Judge Lynch's Order dated December 10, 2008. Jordan v. Verizon Corp., No. 08 Civ. 6414 (GEL), 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008).

favor, and that Judge Kaye "dispensed a favor" to Judge Lippman

when the New York Court of Appeals declined to hear Plaintiff's

appeal.  (Id. at 14, 16.)  In the Verizon case, Plaintiff claims

that "behind the scenes", Judge Scheindlin "decided that the case

would be settled", and forced Plaintiff into an unfair

settlement, and that Defendant attorneys Phelan, Gage, and Fish

"brokered the secret settlement for Judge Scheindlin".  (Compl.

at 18-19.)  Plaintiff alleges that Judge Daniels denied her Rule

60(b) motion for reconsideration "despite clear evidence of

duress and coercion".  (Id. at 20.)

   In support of her allegations of a wide-ranging conspiracy

and "cover-up", Plaintiff alleges the following: the Commission

failed to sanction the judges Plaintiff complained about; the

Appellate Division reversed the favorable jury verdict four days

before Judge Acosta was promoted to that court; the New York

State Court of Appeals denied Plaintiff's application for leave

to appeal; Judge Friedman dismissed Plaintiff's legal malpractice

actions against the Defendant attorneys in this action; the

County Clerk "failed to deliver" the case record to the Appellate

Division when Plaintiff sought to appeal those dismissals; the

Second Circuit Court of Appeals dismissed her appeal of the

Verizon settlement; Judge Ellis recommended dismissal of

Plaintiff's Rule 60(b) motion; and Judge Daniels dismissed that

motion and "exculpated all of the attorneys".  (See Compl. at 9-22.)

Plaintiff brings ten causes of action pursuant to the United States Constitution, United States Code Title 18, the New York Penal Code, the Racketeering Influenced Corrupt Organizations Act ("RICO"), the New York Rules of Judicial Conduct and Professional Conduct, the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, and New York State law.  Plaintiff invokes the Court's diversity jurisdiction to support her state law claims, alleging that she was a "resident and citizen" of Florida from 2005 through 2008.  (Compl. at 8.)

## II.   DISCUSSION

### A.   Standard of Review

Although detailed allegations are not required, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent

7

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). The allegations of a pro se litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). A pro se plaintiff is not, however, exempt from complying with the relevant rules of procedural and substantive law, Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983), and courts are not obligated to entertain all claims presented, however frivolous. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Heicklen v. Morgenthau, No. 09-1474-CV, 2010 WL 1563470, at *1 (2d Cir. Apr. 20, 2010); Fitzgerald v. First East

Seventh Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (per

curiam) (holding that a district court may dismiss a complaint

sua sponte pursuant to § 1915(e) even when plaintiff has paid the

required filing fee).


B.   Standing

As a preliminary matter, Plaintiff lacks standing to bring

many of the claims she asserts.  The burden of establishing

standing rests with the party invoking federal jurisdiction.  See

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  To

assert standing, a Plaintiff must "[1] allege personal injury [2]

fairly traceable to the Defendant's allegedly unlawful conduct

and [3] likely to be redressed by the requested relief."  Fulani

v. Bentsen, 35 F.3d 49, 51-52 (2d Cir. 1994) (quoting Allen v.

Wright, 468 U.S. 737, 751 (1984)).

Plaintiff raises the causes of action asserted in Count One

("Obstruction of Justice") and Count Four ("Bribery and

Extortion") under Title 18 of the United States Code and the New

York Penal Code.  The provisions under Title 18 under which

Plaintiff purports to bring her claims - specifically, 18 U.S.C.

§§ 2, 201, 286, 371, 1505, 1511-13, 1519, and 1951 - are criminal

statutes.  Generally, violations of the Criminal Code may not

serve as the basis for a civil cause of action unless the statute

includes an express or implied private right of action. See Cort
v. Ash, 422 U.S. 66, 79 (1975); Hill v. Didio, 191 Fed.Appx. 13,
14 (2d Cir. 2006) ("A private individual may bring suit under a
federal [criminal] statute only when Congress specifically
intended to create a private right of action"). None of the
provisions plaintiff cites in either Title 18 or the New York
Penal Code includes an express private right of action, nor may
such a right be implied from the language of the statutes.
Further, it is well-established that private citizens lack
standing to force prosecutions in federal court. See Linda R.S.
v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen
lacks a judicially cognizable interest in the prosecution or
nonprosecution of another."). Because Plaintiff lacks standing
to pursue criminal actions against Defendants under either Title
18 or the New York Penal Code, Counts One and Four of the
Complaint must be dismissed.

Plaintiff alleges in Count Seven[5] of the Complaint
violations of the New York Rules of Judicial Conduct, 22 NYCRR
100, and Rules of Professional Conduct, 22 NYCRR 1200,
surrounding the alleged failure of the courts and the Commission

---

[5] As noted above, Plaintiff has named two counts of the
Complaint as Count Seven: "Violation of the Rules of Judicial
Conduct and Professional Conduct" and "Conversion." The Court
refers to and dismisses the former here (and the latter, below).

to investigate the alleged misconduct of the judges and lawyers named as Defendants in this action. However, a non-party to a disciplinary procedure generally has no legally-protected interest that is affected by a failure to investigate or sanction. See Esposito v. New York, et al., No. 07 Civ. 11612 (SAS), 2008 WL 3523910, at *13 (S.D.N.Y. Aug. 8, 2008). In the absence of such an interest, a plaintiff has no standing to assert a claim. Id. (citing Lujan, 504 U.S. at 560). As such, Plaintiff lacks standing to bring the claims she has asserted in Count Seven, and that Count is dismissed.

C.    Immunities

    i.  Judicial Immunity

    Counts Eight ("Denial of Right to Due Process") and Nine ("Libel and Slander by a Judge") of the Complaint are directed against only the Defendant judges named in this action. Judges have absolute immunity from suit for acts performed in their judicial capacities. Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). This "judicial immunity is not overcome by allegations of bad faith or malice," id., nor can a judge "be deprived of immunity because the action he took was in error, . . . or was in excess of his authority[.]" Stump v. Sparkman, 435 U.S. 349, 356 (1978); Esposito, 2008 WL 3523910, at *10-11 ("Even if a judge

11

acts maliciously, a litigant's remedy is to appeal, not to sue the judge."). Judicial immunity for judicial acts can be overcome only where a judge completely lacks jurisdiction over the subject matter of a case. Mireles, 502 U.S. at 11. This immunity likewise extends to "others who perform functions closely associated with the judicial process", Cleavinger v. Saxner, 474 U.S. 193, 200 (1985), and "supporting officers" of the court, Esposito, 2008 WL 3523910, at *11, including court clerks when performing discretionary acts of a judicial nature essential to the judicial process. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997).

All of Plaintiff's claims against the named judges, the Second Circuit Court of Appeals, the Second Circuit Clerk of Court,[6] and the New York County Clerk (First Department) arise out of their respective judicial acts, performed within the scope of their official duties, and are therefore foreclosed by judicial immunity. As such, Counts Eight and Nine of the Complaint are dismissed in their entirety, as are all claims against these Defendants asserted in the remaining Counts of the

---

[6] Plaintiff has named the "Second Circuit Court of Appeals (C/O Judge Ralph Winter & Clerk of Court)" as a Defendant in this action. The Court construes Plaintiff's Complaint liberally as asserting claims against the Court of Appeals as well as Judge Winter and the Clerk of Court.

Complaint.  See 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that" the action "(i) is frivolous or . . . . seeks monetary relief against a defendant who is immune from such relief."); Fitzgerald, 221 F.3d at 363-64; Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'").

## ii.  Sovereign Immunity

With all judicial Defendants immune from suit, only one government Defendant remains: the New York State Commission on Judicial Conduct.  The Eleventh Amendment to the United States Constitution bars from federal court suits brought by a private party against nonconsenting states.[7]  See Board of Trustess v. Garrett, 531 U.S. 356, 363-64 (2001).  A private citizen cannot sue a State in federal court unless the State has consented or Congress has abrogated that immunity.  See Seminole Tribe of Fla.

---

[7] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although the text of the Amendment suggests otherwise, the Supreme Court has explained that the Eleventh Amendment also provides states with immunity in federal court from suits brought by their own citizens.  See Hans v. Louisiana, 134 U.S. 1 (1890).

v. Florida, 517 U.S. 44, 54 (1996). "This jurisdictional bar also immunizes a state entity that is an 'arm of the State'. In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (citing Northern Ins. Co. of N.Y. v. Chatham County, Ga., 547 U.S. 189 (2006)). As an "arm of the State", the New York State Commission on Judicial Conduct has sovereign immunity except where the State of New York has consented to be sued, or Congress has abrogated that immunity. See Esposito, 2008 WL 3523910, at *12 (finding the Commission to be an arm of the State of New York and immune from suit under the Eleventh Amendment); see also Capogrosso v. New York State Com'n on Judicial Conduct, 352 Fed.Appx. 456, 457, 2009 WL 3523384, at *1 (2d Cir. 2009). The Court addresses the sovereign immunity of the Commission as it pertains to Plaintiff's various causes of action, individually, below.


D.    Conspiracy to Defraud

        Plaintiff alleges a civil "Conspiracy to Defraud" in Count Two. Specifically, the Complaint alleges that:

> "all of the judges knew that the actions they were
> committing and the statements t [sic] that they made
> in their Decisions/Orders/Judgments were false and
> rooted in frauds, and that they rendered these actions
> with the purpose of defrauding Plaintiff of her right
> to trial by an impartial trier of fact or jury . . .;
> that they knew attorneys on these matters had tampered
> with   evidence,   and   that   they   made   willful
> representations to cover up their conspiracy; that

14

they required the collusion of other judges, attorneys, clerks and administrative officers of the court to carry out these conspiracies, and that the judges involved benefited [sic] from the conspiracy to defraud Plaintiff as did the original defendant corporations and their law firms.  That the Appellate Courts involved . . . were willful agents whose acceptance of Decisions known to be undertaken in violation of Federal and State Laws, and the Rules of Judicial Conduct, rendered them co-conspirators.  The same is alleged of the New York Commission on Judicial Conduct who departed from its statutory role to aid these deceptions and cover them up instead of initiating real investigations and impeachment proceedings."

(Compl. at 31-32.)  Plaintiff purports to bring this claim pursuant to "the Statute of Frauds".  The statute of frauds is a contract term that refers to the requirement that certain kinds of contracts be memorialized in a signed writing, and is not a separate statute that might provide Plaintiff with a basis for a fraud or conspiracy to defraud claim.

Construing the Complaint liberally, the Court construes Plaintiff's Civil Conspiracy claim as asserting claims under 42 U.S.C. §§ 1983 and 1985.[8]  Both § 1983 and § 1985 claims are

---

[8] To the extent that Plaintiff seeks to bring a private cause of action analogous to a criminal conspiracy claim to defraud under 18 U.S.C. § 371, the federal conspiracy statute does not provide for a private cause of action, as explained in Part B, supra.  See 18 U.S.C. § 371.  Further, as to any purported claim under state law, civil conspiracy is not recognized as an independent tort in New York, see Biosafe-One, Inc. v. Hawks, 639 F.Supp.2d 358, 369 (S.D.N.Y. 2009) (citing Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co., 23 A.D.3d 162, 163, 803 N.Y.S.2d 512, 513 (1st Dep't 2005), and any state law claim fails for lack of subject matter jurisdiction in

subject to a three-year limitations period.  See Ferran v. Town
of Poestenkill, 2000 WL 1728080, at *2 (2d Cir. 2000) (citing
Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)).
Plaintiff filed the Complaint in this action on December 31,
2009, such that any allegation under either section that occurred
before December 31, 2006 is time-barred.

Section 1985(1), which prohibits conspiracies to prevent
federal officials from performing their duties, is inapplicable
here.  Section 1985(2) proscribes, in pertinent part, any
conspiracy between

> "two or more persons . . . to deter, by force,
> intimidation, or threat, any party or witness in any
> court of the United States from attending such court,
> or from testifying to any matter pending therein,
> freely, fully, and truthfully, or to injure such
> party or witness in his person or property on account
> of his having so attended or testified, or to
> influence the verdict, presentment, or indictment of
> any grand or petit juror in any such court, or to
> injure such juror in his person or property on
> account of any verdict, presentment, or indictment
> lawfully assented to by him, or of his being or
> having been such juror . . ."

42 U.S.C. § 1985(2).  The Commission enjoys Eleventh Amendment
sovereign immunity from suit under § 1985, as under § 1983, as an
"arm of the State", and any § 1985 claim against the Commission

---

the absence of a viable federal claim, as explained in Part H.
The Court addresses the viability of claims raised under § 1983
below, Part E.  Any claim of conspiracy under § 1983 also fails
for the same reasons a § 1985 claim fails, as articulated here.

is improper because the agency is not a "person" under § 1985. See, e.g., Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998); Vaizburd v. U.S., 90 F.Supp.2d 210, 216 (E.D.N.Y. 2000) (citation omitted) (a state is not a "person" within the meaning of § 1983 or § 1985).

While Plaintiff makes a number of general allegations of "conspiracy" against Defendants as a group, she makes not a single, specific allegation against any non-judge Defendant within the applicable limitations period that would support a claim of conspiracy against that Defendant. All specific allegations against Defendant attorneys Lebowitz, Phelan, and Gage, for example, occurred before December 31, 2006, (see Compl. at 12, 16-17.) Plaintiff's vague and conclusory allegations of a conspiracy are not sufficient to state a claim under § 1985(2). See Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).[9] As such,

_____

[9] For the same reason, Plaintiff fails to state a claim for civil rights conspiracy under § 1985(3). Under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Britt v. Garcia, 457 F.3d 264, 270 (2d Cir. 2006) (citations omitted). Rooted in equal protection principles, § 1985(3) conspiracy also requires "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks and citation omitted). To the extent that Plaintiff

Count Two is dismissed for failure to state a claim.  See 28 U.S.C. § 1915(e)(2)(ii).

E.    Violation of Constitutional Right to Free Speech

The Court liberally construes Plaintiff's remaining constitutional claim[10] – violation of her right to free speech under the First Amendment, asserted in Count Three – as alleging a constitutional claim against state and federal actors pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), respectively. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws."  K & A Radiologic Tech. Servs., Inc. v. Commissioner of Dep't of Health, 189 F.3d 273, 280 (2d Cir. 1999) (internal citations omitted). Federal courts have analogized Bivens claims to ones brought

_____

intends to assert a claim under § 1985(3), then, that claim also fails because Plaintiff makes no allegation that the alleged conspiracy was motivated by a racial or "otherwise class-based, invidious discriminatory animus".  Plaintiff's only allegations of discrimination, based on disability and sex, are made against the Defendant judges, who are immune from suit.  (See Compl. at 42-43.)  Even these allegations are entirely general, vague and conclusory, and therefore insufficient to support a claim under § 1985.  See id.; Sommer, 709 F.2d at 175.

[10] Plaintiff's claim to a Denial of Due Process, asserted in Count Eight, has already been dismissed by the Court due to the judicial immunity of the Defendants named in that Count.

18

under § 1983 against state actors, and the caselaw addressing issues brought under § 1983 may be used to address constitutional claims raised against federal actors in <u>Bivens</u> cases.  <u>See</u> <u>Butz</u> <u>v. Economou</u>, 438 U.S. 478, 498-99 (1978); <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam).

To state constitutional claims under § 1983 and <u>Bivens</u>, a plaintiff must allege that defendants were state or federal actors; private parties generally are not liable pursuant to § 1983 or <u>Bivens</u>.  <u>See</u> <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838-42 (1982).    Further, it is well-established that the United States Constitution regulates only government, not private parties.  <u>See</u> <u>Keyes v. Union Planters Bank, N.A.</u>, 578 F.Supp.2d 629, 634 (S.D.N.Y. 2008).  Private attorneys, despite their status as officers of the court, do not act under color of state or federal law for purposes of a civil rights complaint.  <u>See</u> <u>Fermin v. Moriarty</u>, No. 96 Civ. 3022 (MBM), 2003 WL 21787351, at *3 (S.D.N.Y. Aug. 4, 2003) (citing <u>Housand v. Heiman</u>, 594 F.2d 923, 924-25 (2d Cir. 1979)).  Private parties may be liable under § 1983 where "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself," <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974); <u>see also</u> <u>Flagg v. Yonkers Savings and Loan Ass'n</u>, 396 F.3d 178,

187 (2d Cir. 2005), or where they are "jointly engaged with state officials" in a conspiracy to deprive the plaintiff of his constitutional rights.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); White v. Monarch Pharmaceuticals, Inc., 346 Fed.Appx. 739, 740-41, 2009 WL 3068217, at *1 (2d Cir. 2009). Plaintiff's vague and conclusory allegations fail to support a claim of conspiracy among the Defendants, as found by the Court above.  The Complaint further suggests no "nexus" of action between the State and the alleged actions of the named attorneys which would warrant treating those actions as actions of the State.  See Jackson, 419 U.S. at 351; White, 346 Fed.Appx at 741. As such, Plaintiff cannot assert a constitutional claim for violation of free speech against any of the lawyers or law firms named in this action.

Plaintiff also has no cause of action under § 1983 as to the sole remaining state Defendant[11] - the New York State Commission on Judicial Conduct.  It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity.  See Mamot v. Board of Regents, 2010 WL 605960, at *1 (2d Cir. Feb.

---

[11] Section 1983 does not affect absolute judicial immunity from any suit arising out of the exercise of judicial powers. See Zuckerman, 421 F.2d 625, 626 n2 (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)).

22, 2010) (citing <u>Quern v. Jordan</u>, 440 U.S. 332, 340-42 (1979)

(additional citation omitted)).  Further, the Commission is not a

"person" within the meaning of § 1983.  <u>See</u> <u>Spencer v. Doe</u>, 139

F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its

agencies nor an official of that agency sued in his or her

official capacity is a 'person' under § 1983"); <u>Zuckerman v.</u>

<u>Appellate Division</u>, 421 F.2d 625, 626 (2d Cir. 1970) (finding the

Appellate Division is not a "person" within the meaning of § 1983

because it is a political subdivision of a state, specifically

"part of the judicial arm of the State of New York").

Accordingly, Plaintiff has no viable § 1983 or <u>Bivens</u> claim

against any of the Defendants, and Count Three of the Complaint

is dismissed due to sovereign immunity and failure to state a

claim.  <u>See</u> 28 U.S.C. § 1915(e)(2)(ii) & (iii).


F.   <u>Civil RICO</u>

Plaintiff alleges in Count Five "Organized Crime by

Judiciary of New York and Conspiracy to Defraud Plaintiff of

Pension/Retirement Fund" under the Racketeering Influenced

Corrupt Organizations Act (RICO), §§ 18 U.S.C. 1961, <u>et seq.</u>[12]

---

[12] In her Complaint, Plaintiff mistakenly refers to the RICO
statute as 42 U.S.C. §§ 1961-1962.  (Compl. at 5.)  Unlike the
other criminal statutes under which Plaintiff purports to bring
claims against Defendants, the RICO statute creates a private
right of action for treble damages for "[a]ny person injured in

Plaintiff alleges that the "defendant judges have transformed the
Judiciary into an organized crime operation", in which "judges
cover up for judges who violate the Rules and Law, attorneys act
as their agents, and the most egregious offenses rewarded [sic]
with promotions, pay raises, and other economic or status
elevation renumeration [sic]" while "[n]o regulatory body or
appellate review panel ever interceded to stop this outrageous
long term scheme, instead dispensing favor after favor . . ."
(Compl. at 40-41.)  Plaintiff alleges that she "personally was
induced through fraud to surrender her . . . Pension and
Retirement savings", and that she "was also witness to bribery of
judges", including the bribery of Judge Acosta by both attorney
Lebowitz and Judge Lippman, and the bribery of Judge Friedman.
(Id. at 41-42.)   Plaintiff further alleges that attorney Ken
Gage bribed attorneys Phelan and Fish with "promises of
'referrals' if they persuaded Plaintiff to accept the token
settlement. . ."  (Id. at 41.)

    Because "[c]ivil RICO is an unusually potent weapon – the
litigation equivalent of a thermonuclear device", World Wrestling
Entertainment, Inc. v. Jakks Pacific, Inc., 530 F.Supp.2d 486,
495-96 (S.D.N.Y. 2007) (citation omitted) and "the mere assertion

---

his business or property by reason of a violation of section
1962."  18 U.S.C. § 1964(c).

of a RICO claim . . . has an almost inevitable stigmatizing
effect on those named as defendants . . . courts should strive to
flush out frivolous RICO allegations at an early stage of the
litigation." <u>Katzman v. Victoria's Secret Catalogue</u>, 167 F.R.D.
649, 655 (S.D.N.Y. 1996) (internal quotation marks and citation
omitted).  To state a claim under civil RICO, Plaintiff must
allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962;
(2) an injury to business or property; and (3) that the injury
was caused by the violation of Section 1962." <u>DeFalco v. Bernas</u>,
244 F.3d 286, 305 (2d Cir. 2001) (quotation omitted).

     Plaintiff does not specify the subsection of § 1962 under
which she asserts her claims, so the Court liberally construes
the Complaint as asserting claims under each subsection here.

     Section 1962(a) prohibits the use of income received from a
pattern of racketeering activities to acquire an interest in,
establish, or operate an enterprise.  18 U.S.C. § 1962(a); <u>see</u>
<u>Carmona v. Spanish Broadcasting System, Inc.</u>, No. 08 Civ. 4475
(LAK), 2009 WL 890054, at *8 (S.D.N.Y. Mar. 30, 2009).
"Racketeering activity" is broadly defined at § 1961(1) to
include a variety of state and federal offenses including, inter
alia, murder, kidnapping, gambling, arson, robbery, bribery and
extortion.  <u>See</u> 18 U.S.C. § 1961(1).  To state a claim under §
1962(a), a plaintiff must allege that she was injured as a

23

proximate consequence of the investment of funds derived from the alleged racketeering activity.  Ouaknine v. MacFarlane, 897 F.2d 75, 82-83 (2d Cir. 1990).  The alleged use of income or investment injury must be "distinct from the injuries resulting from predicate acts" of the enterprise themselves.  Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996), vacated in part on other grounds, 525 U.S. 128 (1998).  Conclusory allegations that defendants used or invested income received from a plaintiff are insufficient to state a claim under 1962(a) because they fail to show how that use or investment injured plaintiffs.  Katzman v. Victoria's Secret, 167 F.R.D. 649, 657 (S.D.N.Y. 1996), aff'd 113 F.3d 1229 (2d Cir. 1997).  Here, Plaintiff makes no allegations at all about Defendants' use or investment of the funds Defendants allegedly derived from the corrupt judiciary "enterprise", and certainly has not shown how any such use or investment injured Plaintiff.  As such, Plaintiff fails to state a claim under § 1962(a).

Section 1962(b) makes it unlawful for "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . ."  18 U.S.C. § 1962(b).  To state a claim under Section 1962(b), a plaintiff must allege "(1) an injury resulting from the acquisition or

24

control of an enterprise through a pattern of racketeering activity" and (2) "that the injury was caused by the acquisition or maintenance of control and not by the predicate acts." Carmona, 2009 WL 890054, at *8 (internal citations omitted).  In this case, Plaintiff makes no allegation that any Defendant acquired or controlled the alleged enterprise, or that her injury was caused by such acquisition or maintenance of control.  As such, any claim under § 1962(b) fails to state a claim.

Section 1962(c) of the Civil RICO statute provides, in pertinent part, that it is unlawful

> "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

18 U.S.C. § 1962(c).  To establish a violation of § 1962(c), then, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco, 244 F.3d at 306 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (additional citations omitted)).  To establish a "pattern of racketeering activity", a plaintiff must "plead at least two predicate acts and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." GICC Capital Corp. v. Tech. Fin.

25

Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995) (citation omitted);
see 18 U.S.C. § 1961(5).  A plaintiff must establish the
requirements of § 1962(c) with respect to each defendant.
DeFalco, 244 F.3d at 306; see United States v. Persico, 832 F.2d
705, 714 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988) ("The
focus of section 1962(c) is on the individual patterns of
racketeering engaged in by a defendant. . .").  Plaintiff fails
to state a claim § 1962(c) against any named Defendant because
she fails to allege that any Defendant committed two or more
predicate acts to constitute a "pattern of racketeering
activity".  See 18 U.S.C. § 1961; Persico, 832 F.2d at 714.
Plaintiff alleges that some of the Defendants committed bribery,
but otherwise makes only vague, conclusory, and implausible
allegations of "conspiracy" and fraud; that is, that Defendants
somehow conspired against her to acquire economic benefits and/or
elevated status.  "[C]ommon law fraud does not constitute a
racketeering activity for RICO purposes."  Cofacredit, S.A. v.
Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).
Accordingly, any claim under § 1962(c) fails.

Section 1962(d) prohibits any person from conspiring "to
violate any of the provisions of subsections (a), (b), or (c) of
this section."  18 U.S.C. § 1962(d).  Plaintiff's failure to
satisfy the pleading requirements of subsection (a), (b), or (c)

26

defeats any conspiracy claim under § 1962(d).  See Katzman, 167

F.R.D. at 658; Carmona, 2009 WL 890054, at *9.  Plaintiff fails

to state a claim of Civil RICO against any Defendant, and Count

Five is accordingly dismissed.  See 28 U.S.C. § 1915(e)(2)(ii).


G.    Violations of the ADA and Title VII

        Plaintiff alleges in Count Six of the Complaint that

Defendants discriminated against her in violation of federal and

state anti-discrimination laws.  As to her federal claims,

Plaintiff alleges specifically that Defendants discriminated

against her in violation of Title VII and the Americans with

Disabilities Act (ADA).  Plaintiff does not specify the Title or

Titles of the ADA under which she asserts her claims.

        Plaintiff cannot maintain a cause of action under Title VII

against any named Defendant because Plaintiff was never employed

by any of the Defendants.  See Baba v. Warren Mgmt. Consultants,

Inc., 882 F.Supp. 339, 342 (S.D.N.Y.) (Title VII plaintiff has no

cause of action against defendant absent allegation of an

employment relationship between defendant and plaintiff).

Further, neither Title VII nor the ADA permits claims of

discrimination against individuals, see Tomka v. Seiler Corp., 66

F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by

27

Burlington Indus., Inc. v Ellerth, 524 U.S. 742 (1998); Darcy v. Lippman, No. 08-2293, 2009 WL 3416168, at *1 (2d Cir. Oct. 22, 2009); Sicular v. N.Y.C. Dept. of Homeless Services, No. 09 Civ. 0981, 2010 WL 423013, at *12 (S.D.N.Y. Feb. 4, 2010), such that Plaintiff cannot maintain a cause of action under any Title of the ADA against any of the individuals named as Defendants. Plaintiff likewise cannot maintain a cause of action under the ADA against the private law firm Defendants because none of these Defendants were at any time an employer of Plaintiff (Title I), a public entity (Title II), or a public accommodation (Title III). See McKnight v. Middleton, --- F.Supp. ----, 2010 WL 1221431, at *20 (E.D.N.Y. Mar. 29, 2010) (citing McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007)) (additional citation omitted).

As to the Commission, in order to state a claim under Title II of the ADA[13] (for claims against public entities), a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate or

---

[13] The Supreme Court has held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against States for conduct that violates the Constitution. U.S. v. Georgia, 546 U.S. 151, 159-60 (2006).

benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants, by reason of her disability." See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). In her fifty-three page Complaint, Plaintiff does not make a single allegation that the Commission denied her services or otherwise discriminated against her based on her disability.[14] The Complaint alleges only that the Commission refused to investigate her complaints. (Compl. at 8, 10, 13, 16.)

To the extent that Plaintiff seeks to have this Court review the state court decisions against her, this Court lacks jurisdiction to grant Plaintiff the assistance she seeks. The Supreme Court held in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983), that a United States District Court has no authority to review final judgments of state courts, except for reviews pursuant to an application for a writ of habeas corpus. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (Rooker-Feldman doctrine applies specifically "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers

---

[14] In fact, as noted above, the Complaint makes no allegation of discrimination based on Plaintiff's disability against any Defendant but the named judges, and even those allegations are utterly vague and conclusory. (See Compl. 42-43.)

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); Brooks-Jones v. Hones, 916 F. Supp. 280, 281-82 (S.D.N.Y. 1996) ("a Plaintiff also may not seek reversal of a state court judgment simply by casting [her] complaint in the form of a civil rights action").

Plaintiff also seeks in Count Six "a review of all discrimination cases that have been reversed upon appeal, or dismissed with triable issues of fact and restitution to others who suffered similar fates." (Compl. at 42.) To the extent that Plaintiff asks this Court to review the discrimination cases of other plaintiffs, Plaintiff lacks standing to seek this relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Plaintiff fails to state a claim against any Defendant under either Title VII or the ADA. As such, Count Six of the Complaint is dismissed to the extent that it asserts claims under these federal statutes. See 28 U.S.C. § 1915(e)(2)(ii). Any purported claim under state anti-discrimination laws fails for lack of subject matter jurisdiction, as explained below.

H.   <u>State Law Claims</u>

The sole remaining Count of the Complaint - the second Count labeled "Count Seven" - alleges conversion.  With no surviving federal claim, jurisdiction for this claim, and any state law claims asserted in Counts Two and Six, depend upon the existence of diversity jurisdiction.

To establish diversity jurisdiction, the citizenship of all Plaintiffs must be diverse from that of all Defendants, and the amount in controversy must exceed $75,000.  <u>See</u> 28 U.S.C. § 1332. Although she alleges the existence of diversity jurisdiction for this action, Plaintiff alleges that she "was a citizen and resident of New York . . . for the majority of her life including the present", while she states that all Defendants are from New York.  (Compl. at 8.)  Plaintiff attempts to preserve diversity by stating that "during the period of 2005-2008 when many of these violations were committed, Plaintiff was a resident and citizen of Palm Beach FL."  (<u>Id.</u>)

Unfortunately for Plaintiff, "it is well-settled, that federal-diversity jurisdiction depends on the citizenship of the parties at the time suit is filed."  <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468, 478 (2003) (citing <u>Anderson v. Watt</u>, 138 U.S. 694, 702-703 (1891)); <u>see</u> <u>Universal Licensing Corp. v. Paola del Lungo</u>

S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) (where "jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced."). Accordingly, Plaintiff's conversion claim alleged in Count Seven, and any state law claims intended in Counts Two and Six, are dismissed for lack of subject matter jurisdiction.

### III.    CONCLUSION

For the reasons set forth above, the Complaint is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:    New York, New York

May 7, 2010

Deborah A. Batts
DEBORAH A. BATTS
United States District Judge