v. Florida, 517 U.S. 44, 54 (1996). "This jurisdictional bar also immunizes a state entity that is an 'arm of the State'. In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (citing Northern Ins. Co. of N.Y. v. Chatham County, Ga., 547 U.S. 189 (2006)). As an "arm of the State", the New York State Commission on Judicial Conduct has sovereign immunity except where the State of New York has consented to be sued, or Congress has abrogated that immunity. See Esposito, 2008 WL 3523910, at *12 (finding the Commission to be an arm of the State of New York and immune from suit under the Eleventh Amendment); see also Capogrosso v. New York State Com'n on Judicial Conduct, 352 Fed.Appx. 456, 457, 2009 WL 3523384, at *1 (2d Cir. 2009). The Court addresses the sovereign immunity of the Commission as it pertains to Plaintiff's various causes of action, individually, below.

D.   Conspiracy to Defraud

Plaintiff alleges a civil "Conspiracy to Defraud" in Count Two. Specifically, the Complaint alleges that:

> "all of the judges knew that the actions they were committing and the statements t [sic] that they made in their Decisions/Orders/Judgments were false and rooted in frauds, and that they rendered these actions with the purpose of defrauding Plaintiff of her right to trial by an impartial trier of fact or jury . . .; that they knew attorneys on these matters had tampered with evidence, and that they made willful representations to cover up their conspiracy; that

> they required the collusion of other judges, attorneys, clerks and administrative officers of the court to carry out these conspiracies, and that the judges involved benefited [sic] from the conspiracy to defraud Plaintiff as did the original defendant corporations and their law firms. That the Appellate Courts involved . . . were willful agents whose acceptance of Decisions known to be undertaken in violation of Federal and State Laws, and the Rules of Judicial Conduct, rendered them co-conspirators. The same is alleged of the New York Commission on Judicial Conduct who departed from its statutory role to aid these deceptions and cover them up instead of initiating real investigations and impeachment proceedings."

(Compl. at 31-32.) Plaintiff purports to bring this claim pursuant to "the Statute of Frauds". The statute of frauds is a contract term that refers to the requirement that certain kinds of contracts be memorialized in a signed writing, and is not a separate statute that might provide Plaintiff with a basis for a fraud or conspiracy to defraud claim.

Construing the Complaint liberally, the Court construes Plaintiff's Civil Conspiracy claim as asserting claims under 42 U.S.C. §§ 1983 and 1985.[8] Both § 1983 and § 1985 claims are

---

[8] To the extent that Plaintiff seeks to bring a private cause of action analogous to a criminal conspiracy claim to defraud under 18 U.S.C. § 371, the federal conspiracy statute does not provide for a private cause of action, as explained in Part B, supra. See 18 U.S.C. § 371. Further, as to any purported claim under state law, civil conspiracy is not recognized as an independent tort in New York, see Biosafe-One, Inc. v. Hawks, 639 F.Supp.2d 358, 369 (S.D.N.Y. 2009) (citing Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co., 23 A.D.3d 162, 163, 803 N.Y.S.2d 512, 513 (1st Dep't 2005), and any state law claim fails for lack of subject matter jurisdiction in

15

subject to a three-year limitations period. See Ferran v. Town of Poestenkill, 2000 WL 1728080, at *2 (2d Cir. 2000) (citing Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)). Plaintiff filed the Complaint in this action on December 31, 2009, such that any allegation under either section that occurred before December 31, 2006 is time-barred.

Section 1985(1), which prohibits conspiracies to prevent federal officials from performing their duties, is inapplicable here. Section 1985(2) proscribes, in pertinent part, any conspiracy between

> "two or more persons . . . to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror . . ."

42 U.S.C. § 1985(2). The Commission enjoys Eleventh Amendment sovereign immunity from suit under § 1985, as under § 1983, as an "arm of the State", and any § 1985 claim against the Commission

---

the absence of a viable federal claim, as explained in Part H. The Court addresses the viability of claims raised under § 1983 below, Part E. Any claim of conspiracy under § 1983 also fails for the same reasons a § 1985 claim fails, as articulated here.

is improper because the agency is not a "person" under § 1985. See, e.g., Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998); Vaizburd v. U.S., 90 F.Supp.2d 210, 216 (E.D.N.Y. 2000) (citation omitted) (a state is not a "person" within the meaning of § 1983 or § 1985).

While Plaintiff makes a number of general allegations of "conspiracy" against Defendants as a group, she makes not a single, specific allegation against any non-judge Defendant within the applicable limitations period that would support a claim of conspiracy against that Defendant. All specific allegations against Defendant attorneys Lebowitz, Phelan, and Gage, for example, occurred before December 31, 2006, (see Compl. at 12, 16-17.) Plaintiff's vague and conclusory allegations of a conspiracy are not sufficient to state a claim under § 1985(2). See Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).[9] As such,

---

[9] For the same reason, Plaintiff fails to state a claim for civil rights conspiracy under § 1985(3). Under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Britt v. Garcia, 457 F.3d 264, 270 (2d Cir. 2006) (citations omitted). Rooted in equal protection principles, § 1985(3) conspiracy also requires "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks and citation omitted). To the extent that Plaintiff

17

Count Two is dismissed for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(ii).

E. Violation of Constitutional Right to Free Speech

The Court liberally construes Plaintiff's remaining constitutional claim[10] - violation of her right to free speech under the First Amendment, asserted in Count Three - as alleging a constitutional claim against state and federal actors pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), respectively. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." K & A Radiologic Tech. Servs., Inc. v. Commissioner of Dep't of Health, 189 F.3d 273, 280 (2d Cir. 1999) (internal citations omitted). Federal courts have analogized Bivens claims to ones brought

---

intends to assert a claim under § 1985(3), then, that claim also fails because Plaintiff makes no allegation that the alleged conspiracy was motivated by a racial or "otherwise class-based, invidious discriminatory animus". Plaintiff's only allegations of discrimination, based on disability and sex, are made against the Defendant judges, who are immune from suit. (See Compl. at 42-43.) Even these allegations are entirely general, vague and conclusory, and therefore insufficient to support a claim under § 1985. See id.; Sommer, 709 F.2d at 175.

[10] Plaintiff's claim to a Denial of Due Process, asserted in Count Eight, has already been dismissed by the Court due to the judicial immunity of the Defendants named in that Count.

18

under § 1983 against state actors, and the caselaw addressing issues brought under § 1983 may be used to address constitutional claims raised against federal actors in Bivens cases. See Butz v. Economou, 438 U.S. 478, 498-99 (1978); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam).

To state constitutional claims under § 1983 and Bivens, a plaintiff must allege that defendants were state or federal actors; private parties generally are not liable pursuant to § 1983 or Bivens. See Rendell-Baker v. Kohn, 457 U.S. 830, 838-42 (1982). Further, it is well-established that the United States Constitution regulates only government, not private parties. See Keyes v. Union Planters Bank, N.A., 578 F.Supp.2d 629, 634 (S.D.N.Y. 2008). Private attorneys, despite their status as officers of the court, do not act under color of state or federal law for purposes of a civil rights complaint. See Fermin v. Moriarty, No. 96 Civ. 3022 (MBM), 2003 WL 21787351, at *3 (S.D.N.Y. Aug. 4, 2003) (citing Housand v. Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979)). Private parties may be liable under § 1983 where "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself," Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974); see also Flagg v. Yonkers Savings and Loan Ass'n, 396 F.3d 178,

187 (2d Cir. 2005), or where they are "jointly engaged with state officials" in a conspiracy to deprive the plaintiff of his constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); White v. Monarch Pharmaceuticals, Inc., 346 Fed.Appx. 739, 740-41, 2009 WL 3068217, at *1 (2d Cir. 2009). Plaintiff's vague and conclusory allegations fail to support a claim of conspiracy among the Defendants, as found by the Court above. The Complaint further suggests no "nexus" of action between the State and the alleged actions of the named attorneys which would warrant treating those actions as actions of the State. See Jackson, 419 U.S. at 351; White, 346 Fed.Appx at 741. As such, Plaintiff cannot assert a constitutional claim for violation of free speech against any of the lawyers or law firms named in this action.

Plaintiff also has no cause of action under § 1983 as to the sole remaining state Defendant[11] - the New York State Commission on Judicial Conduct. It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity. See Mamot v. Board of Regents, 2010 WL 605960, at *1 (2d Cir. Feb.

---

[11] Section 1983 does not affect absolute judicial immunity from any suit arising out of the exercise of judicial powers. See Zuckerman, 421 F.2d 625, 626 n2 (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)).

20

22, 2010) (citing <u>Quern v. Jordan</u>, 440 U.S. 332, 340-42 (1979) (additional citation omitted)). Further, the Commission is not a "person" within the meaning of § 1983. <u>See</u> <u>Spencer v. Doe</u>, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983"); <u>Zuckerman v. Appellate Division</u>, 421 F.2d 625, 626 (2d Cir. 1970) (finding the Appellate Division is not a "person" within the meaning of § 1983 because it is a political subdivision of a state, specifically "part of the judicial arm of the State of New York").

Accordingly, Plaintiff has no viable § 1983 or <u>Bivens</u> claim against any of the Defendants, and Count Three of the Complaint is dismissed due to sovereign immunity and failure to state a claim. <u>See</u> 28 U.S.C. § 1915(e)(2)(ii) & (iii).

F.   <u>Civil RICO</u>

Plaintiff alleges in Count Five "Organized Crime by Judiciary of New York and Conspiracy to Defraud Plaintiff of Pension/Retirement Fund" under the Racketeering Influenced Corrupt Organizations Act (RICO), §§ 18 U.S.C. 1961, <u>et seq.</u>[12]

---

[12] In her Complaint, Plaintiff mistakenly refers to the RICO statute as 42 U.S.C. §§ 1961-1962. (Compl. at 5.) Unlike the other criminal statutes under which Plaintiff purports to bring claims against Defendants, the RICO statute creates a private right of action for treble damages for "[a]ny person injured in

21

Plaintiff alleges that the "defendant judges have transformed the Judiciary into an organized crime operation", in which "judges cover up for judges who violate the Rules and Law, attorneys act as their agents, and the most egregious offenses rewarded [sic] with promotions, pay raises, and other economic or status elevation renumeration [sic]" while "[n]o regulatory body or appellate review panel ever interceded to stop this outrageous long term scheme, instead dispensing favor after favor . . ." (Compl. at 40-41.)  Plaintiff alleges that she "personally was induced through fraud to surrender her . . . Pension and Retirement savings", and that she "was also witness to bribery of judges", including the bribery of Judge Acosta by both attorney Lebowitz and Judge Lippman, and the bribery of Judge Friedman. (Id. at 41-42.)  Plaintiff further alleges that attorney Ken Gage bribed attorneys Phelan and Fish with "promises of 'referrals' if they persuaded Plaintiff to accept the token settlement. . ."  (Id. at 41.)

Because "[c]ivil RICO is an unusually potent weapon - the litigation equivalent of a thermonuclear device", World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 530 F.Supp.2d 486, 495-96 (S.D.N.Y. 2007) (citation omitted) and "the mere assertion

---

his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation marks and citation omitted). To state a claim under civil RICO, Plaintiff must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (quotation omitted).

Plaintiff does not specify the subsection of § 1962 under which she asserts her claims, so the Court liberally construes the Complaint as asserting claims under each subsection here.

Section 1962(a) prohibits the use of income received from a pattern of racketeering activities to acquire an interest in, establish, or operate an enterprise. 18 U.S.C. § 1962(a); see Carmona v. Spanish Broadcasting System, Inc., No. 08 Civ. 4475 (LAK), 2009 WL 890054, at *8 (S.D.N.Y. Mar. 30, 2009). "Racketeering activity" is broadly defined at § 1961(1) to include a variety of state and federal offenses including, inter alia, murder, kidnapping, gambling, arson, robbery, bribery and extortion. See 18 U.S.C. § 1961(1). To state a claim under § 1962(a), a plaintiff must allege that she was injured as a

23

proximate consequence of the investment of funds derived from the alleged racketeering activity. Ouaknine v. MacFarlane, 897 F.2d 75, 82-83 (2d Cir. 1990). The alleged use of income or investment injury must be "distinct from the injuries resulting from predicate acts" of the enterprise themselves. Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996), vacated in part on other grounds, 525 U.S. 128 (1998). Conclusory allegations that defendants used or invested income received from a plaintiff are insufficient to state a claim under 1962(a) because they fail to show how that use or investment injured plaintiffs. Katzman v. Victoria's Secret, 167 F.R.D. 649, 657 (S.D.N.Y. 1996), aff'd 113 F.3d 1229 (2d Cir. 1997). Here, Plaintiff makes no allegations at all about Defendants' use or investment of the funds Defendants allegedly derived from the corrupt judiciary "enterprise", and certainly has not shown how any such use or investment injured Plaintiff. As such, Plaintiff fails to state a claim under § 1962(a).

Section 1962(b) makes it unlawful for "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . ." 18 U.S.C. § 1962(b). To state a claim under Section 1962(b), a plaintiff must allege "(1) an injury resulting from the acquisition or

control of an enterprise through a pattern of racketeering activity" and (2) "that the injury was caused by the acquisition or maintenance of control and not by the predicate acts." Carmona, 2009 WL 890054, at *8 (internal citations omitted). In this case, Plaintiff makes no allegation that any Defendant acquired or controlled the alleged enterprise, or that her injury was caused by such acquisition or maintenance of control. As such, any claim under § 1962(b) fails to state a claim.

Section 1962(c) of the Civil RICO statute provides, in pertinent part, that it is unlawful

> "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

18 U.S.C. § 1962(c). To establish a violation of § 1962(c), then, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco, 244 F.3d at 306 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (additional citations omitted)). To establish a "pattern of racketeering activity", a plaintiff must "plead at least two predicate acts and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." GICC Capital Corp. v. Tech. Fin.

25

Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995) (citation omitted); see 18 U.S.C. § 1961(5). A plaintiff must establish the requirements of § 1962(c) with respect to each defendant. DeFalco, 244 F.3d at 306; see United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant. . ."). Plaintiff fails to state a claim § 1962(c) against any named Defendant because she fails to allege that any Defendant committed two or more predicate acts to constitute a "pattern of racketeering activity". See 18 U.S.C. § 1961; Persico, 832 F.2d at 714. Plaintiff alleges that some of the Defendants committed bribery, but otherwise makes only vague, conclusory, and implausible allegations of "conspiracy" and fraud; that is, that Defendants somehow conspired against her to acquire economic benefits and/or elevated status. "[C]ommon law fraud does not constitute a racketeering activity for RICO purposes." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Accordingly, any claim under § 1962(c) fails.

Section 1962(d) prohibits any person from conspiring "to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Plaintiff's failure to satisfy the pleading requirements of subsection (a), (b), or (c)

defeats any conspiracy claim under § 1962(d). See Katzman, 167 F.R.D. at 658; Carmona, 2009 WL 890054, at *9. Plaintiff fails to state a claim of Civil RICO against any Defendant, and Count Five is accordingly dismissed. See 28 U.S.C. § 1915(e)(2)(ii).

G.  Violations of the ADA and Title VII

Plaintiff alleges in Count Six of the Complaint that Defendants discriminated against her in violation of federal and state anti-discrimination laws. As to her federal claims, Plaintiff alleges specifically that Defendants discriminated against her in violation of Title VII and the Americans with Disabilities Act (ADA). Plaintiff does not specify the Title or Titles of the ADA under which she asserts her claims.

Plaintiff cannot maintain a cause of action under Title VII against any named Defendant because Plaintiff was never employed by any of the Defendants. See Baba v. Warren Mgmt. Consultants, Inc., 882 F.Supp. 339, 342 (S.D.N.Y.) (Title VII plaintiff has no cause of action against defendant absent allegation of an employment relationship between defendant and plaintiff). Further, neither Title VII nor the ADA permits claims of discrimination against individuals, see Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by

27

Burlington Indus., Inc. v Ellerth, 524 U.S. 742 (1998); Darcy v. Lippman, No. 08-2293, 2009 WL 3416168, at *1 (2d Cir. Oct. 22, 2009); Sicular v. N.Y.C. Dept. of Homeless Services, No. 09 Civ. 0981, 2010 WL 423013, at *12 (S.D.N.Y. Feb. 4, 2010), such that Plaintiff cannot maintain a cause of action under any Title of the ADA against any of the individuals named as Defendants. Plaintiff likewise cannot maintain a cause of action under the ADA against the private law firm Defendants because none of these Defendants were at any time an employer of Plaintiff (Title I), a public entity (Title II), or a public accommodation (Title III). See McKnight v. Middleton, --- F.Supp. ----, 2010 WL 1221431, at *20 (E.D.N.Y. Mar. 29, 2010) (citing McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007)) (additional citation omitted).

As to the Commission, in order to state a claim under Title II of the ADA[13] (for claims against public entities), a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate or

---

[13] The Supreme Court has held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against States for conduct that violates the Constitution. U.S. v. Georgia, 546 U.S. 151, 159-60 (2006).

28

benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants, by reason of her disability." See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). In her fifty-three page Complaint, Plaintiff does not make a single allegation that the Commission denied her services or otherwise discriminated against her based on her disability.[14] The Complaint alleges only that the Commission refused to investigate her complaints. (Compl. at 8, 10, 13, 16.)

To the extent that Plaintiff seeks to have this Court review the state court decisions against her, this Court lacks jurisdiction to grant Plaintiff the assistance she seeks. The Supreme Court held in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983), that a United States District Court has no authority to review final judgments of state courts, except for reviews pursuant to an application for a writ of habeas corpus. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (Rooker-Feldman doctrine applies specifically "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers

---

[14] In fact, as noted above, the Complaint makes no allegation of discrimination based on Plaintiff's disability against any Defendant but the named judges, and even those allegations are utterly vague and conclusory. (See Compl. 42-43.)

29

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); Brooks-Jones v. Hones, 916 F. Supp. 280, 281-82 (S.D.N.Y. 1996) ("a Plaintiff also may not seek reversal of a state court judgment simply by casting [her] complaint in the form of a civil rights action").

Plaintiff also seeks in Count Six "a review of all discrimination cases that have been reversed upon appeal, or dismissed with triable issues of fact and restitution to others who suffered similar fates." (Compl. at 42.) To the extent that Plaintiff asks this Court to review the discrimination cases of other plaintiffs, Plaintiff lacks standing to seek this relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Plaintiff fails to state a claim against any Defendant under either Title VII or the ADA. As such, Count Six of the Complaint is dismissed to the extent that it asserts claims under these federal statutes. See 28 U.S.C. § 1915(e)(2)(ii). Any purported claim under state anti-discrimination laws fails for lack of subject matter jurisdiction, as explained below.

H.   State Law Claims

The sole remaining Count of the Complaint - the second Count labeled "Count Seven" - alleges conversion.  With no surviving federal claim, jurisdiction for this claim, and any state law claims asserted in Counts Two and Six, depend upon the existence of diversity jurisdiction.

To establish diversity jurisdiction, the citizenship of all Plaintiffs must be diverse from that of all Defendants, and the amount in controversy must exceed $75,000.  See 28 U.S.C. § 1332.  Although she alleges the existence of diversity jurisdiction for this action, Plaintiff alleges that she "was a citizen and resident of New York . . . for the majority of her life including the present", while she states that all Defendants are from New York.  (Compl. at 8.)  Plaintiff attempts to preserve diversity by stating that "during the period of 2005-2008 when many of these violations were committed, Plaintiff was a resident and citizen of Palm Beach FL."  (Id.)

Unfortunately for Plaintiff, "it is well-settled, that federal-diversity jurisdiction depends on the citizenship of the parties at the time suit is filed." Dole Food Co. v. Patrickson, 538 U.S. 468, 478 (2003) (citing Anderson v. Watt, 138 U.S. 694, 702-703 (1891)); see Universal Licensing Corp. v. Paola del Lungo

31

S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) (where "jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced."). Accordingly, Plaintiff's conversion claim alleged in Count Seven, and any state law claims intended in Counts Two and Six, are dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

For the reasons set forth above, the Complaint is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:    New York, New York

*May 7, 2010*

*Deborah A. Batts*
_____
DEBORAH A. BATTS
United States District Judge

```
                                         X
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kathryn Jordan,
        PLAINTIFF                              09 cv 10616

--v—
                                               AFFIRMATION OF SERVICE

Judge Jonathon Lippman Et Al,
        DEFENDANTS
                                         X
```

I, Alvaro Tutino, declare under penalty of perjury that I have served a true and accurate copy of PLAINTIFF"S MOTION to VACATE VOID ORDER upon the Defendants today May 19th, 2010 via UPS Mail.

Dated: May 19th, 2010
       New York NY

                                    954 Lexington Ave #777
                                    NY, NY    10021

Via US Mail:
Cc:  Ms. Monica Connell, Attorney General Office
     120 Broadway, New York, NY 10271
     Mr. Robert Leonard, Drinker Biddle, 140 Broadway, New York NY 10005
     Mr. Alan Bloom Paul Hastings 75 East 55th St NY NY 10022
     Sir Martin Sorrell, Ms. Firouzeh Barahainpout WPP Group, 125 Park Avenue, 4th floor , NY NY 10004
     Mr. Ivan Seidenberg, Mr. Randy Milch Verizon Communications 140 West St NY NY 10007
     Mr. Philip Touitou, Hinshaw Culbertson, 780 Third Ave NY NY 10017
     Mr. Todd Belous Rivkin Radler 926 Reckson Pl Uniondale NY 11556
     Judges Shira Scheindlin, George Daniels, Ronald Ellis,
     USDC SDNY 500 Pearl St New York NY 10007
     Judge Ralph Winter for Second Circuit, & Judge Gerard Lynch 500 Pearl St New York NY 10007
     Jonathan Bruno, Kaufman Borgeest, 120 Broadway,14th flr, NY NY 10271